**Gwen FAYNE et al.**

v.

**Teresa VINCENT et al.**

Supreme Court of Tennessee,
at Knoxville.

May 5, 2009 Session.

Dec. 11, 2009.

Travis D. Henry and J. Michael Sharp, Cleveland, Tennessee, for the appellants, Teresa Vincent and David Vincent.

Michael A. Anderson, Chattanooga, Tennessee, for the appellees, Gwen Fayne and Alfred Fayne.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

This appeal involves the application of the Tennessee Consumer Protection Act to real estate professionals engaged in the sale of their personal residence. When problems with the septic system occurred soon after the sale, the purchasers filed suit in the Chancery Court for Bradley County seeking rescission and damages. The trial court, sitting without a jury, determined that the "[residential property] disclosure statement was violated" but that the sellers had not acted intentionally, maliciously, or fraudulently. The trial court ordered that the sales contract be rescinded and directed the sellers to repurchase the property from the purchasers for the original purchase price of $104,500. The purchasers appealed, and the Court of Appeals remanded the case to award additional damages to return the purchasers to their position prior to the sale and to pay for their legal expenses. *Fayne v. Vincent (Fayne I),* No. E2003–01966–COA–R3–CV, 2004 WL 1749189 (Tenn.Ct.App. Aug.5, 2004) (No Tenn. R.App. P. 11 application filed). On remand, the trial court found that the sellers had violated the Tennessee Consumer Protection Act and that the sellers should pay the buyers $120,483.93, as well as $37,483.93 in attorney's fees. The sellers appealed, and the Court of Appeals affirmed the judgment. *Fayne v. Vincent (Fayne II),* No. E2007–00642–COA–R3–CV, 2008 WL 657849 (Tenn.Ct.App. Mar.12, 2008). We granted the sellers' application for permission to appeal to address the application of the Tennessee Consumer Protection Act to real estate professionals engaged in the sale of their personal residence. We have determined (1) that the Tennessee Consumer Protection Act applies to the sellers under the facts of this case, and (2) that the sellers violated the Act by failing to provide the purchasers with all the information they possessed regarding the septic system. Accordingly, we affirm the judgment of the Court of Appeals.

## I.

David and Teresa Vincent have careers in the development, construction, and sale of residential property. Mr. Vincent is a builder and developer, and Ms. Vincent is a realtor. Mr. Vincent acted as the developer of the Quail Run subdivision in Bradley County, and he also built one or more of the homes in the subdivision.[1]

1. The record on appeal in this case is incomplete. Except for a few excerpts from the transcripts of the proceedings, the record does not contain a complete transcript or statement of the evidence from the original trial in 2002 or from the proceedings before the special master or the trial court following the remand of the case by the Court of Appeals. None of the exhibits mentioned in the pleadings have been included in the record. Accordingly, we have obtained many of the facts included in this opinion from the trial

In August 1994, as part of his construction of a house on Lot 7 of the Quail Run subdivision, Mr. Vincent obtained a permit to construct a septic system for the house. The permit required that the house be sited 90 to 100 feet from the road in order to accommodate the septic system. Notwithstanding this requirement, Mr. Vincent constructed the house with a 60–foot setback from the road. When the completed septic system was inspected in June 1996, the inspector noted that the house was sited too close to the street and that, if septic problems occurred, the property owners would be required "to install [a] pump to pump to back of lot."

The Vincents moved into the house on Lot 7 after it was completed. Because they planned to sell the house, they completed and signed a Tennessee Residential Property Condition Disclosure Statement on October 1, 1996, stating that they were unaware of any defects or malfunctions in the septic system. Ms. Vincent testified that she signed this statement in her dual capacity as owner of the property and as the realtor for the property.

In December 1996, the Vincents noticed standing water in their yard and staining on the sidewalk in front of their house. Because they suspected a problem with the septic system, the Vincents excavated the system to inspect the lines. The inspection revealed that the lines were dry even though the surrounding soil was wet. The Vincents added some rock, reburied the lines, and pressure washed the sidewalk to remove the stains.

In January 1997, Gwen[2] and Alfred Fayne toured the Vincents' house. They executed a contract to purchase the house in June 1997. Prior to the closing, the Faynes obtained an inspection of the house, including the septic system. A dye test conducted by the inspector did not reveal any leaks in the septic system at that time. The Vincents did not inform the Faynes or their inspector about the problems with the sewer that they had experienced in December 1996 or about the conditional approval of the septic system in June 1996. The purchase of the house was completed on July 28, 1997.

After the Faynes moved into their new home, they began to notice odorous fluid seeping around the septic tank, especially after they used the washing machine or the bathtub. On February 25, 1998, the Faynes filed suit against the Vincents in the Chancery Court for Bradley County seeking to rescind the sale transaction and to recover compensatory and punitive damages. The Faynes' claims sounded in negligent misrepresentation, fraud, deceit, and violations of the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101 to –130 (2001 & Supp.2009).[3]

---

court's various findings of fact and from the first opinion filed by the Court of Appeals in *Fayne I*, 2004 WL 1749189, at * 1–2. *See State ex rel. McGhee v. St. John*, 837 S.W.2d 596, 597 (Tenn.1992) (relying on recitation of facts in an earlier appeal); *State ex rel. Brown v. Newell*, 216 Tenn. 284, 288, 391 S.W.2d 667, 669 (1965) ("It is axiomatic that we may take judicial notice of facts in an earlier proceeding of the same case and our final action thereon."); *Johnson v. State*, 145 S.W.3d 97, 100–03 (Tenn.Crim.App.2004) (taking facts from opinion on direct appeal).

2. On August 21, 2009, we granted the Faynes' motion to correct the spelling of Ms. Fayne's first name from "Gwinn" to "Gwen" in the style of the case.

3. On October 29, 1998, the Faynes filed a separate suit against Re/Max Real Estate Professionals, the real estate broker with which Ms. Vincent was affiliated. This lawsuit was consolidated with the lawsuit against the Vincents in February 1999. The Faynes' claims against Re/Max Real Estate Professionals are not part of this appeal.

The trial court conducted a two-day bench trial on December 11 and 17, 2002. At trial, evidence was introduced that a second dye test revealed no seepage, and a water test performed in May 2002 indicated no bacteria in the water. The court found that the "disclosure statement was violated." The court also found that Mr. Vincent was aware of the "problems or potential problems with the septic system" and "an unauthorized change in the utility." However, the trial court concluded that there was no proof that the Vincents' representations regarding the septic system were "intentional, malicious, or fraudulent" because they "may have thought that the problem was fixed."

The trial court rescinded the contract for the sale of the house because the Faynes "bought a house that they thought had a good [septic] system, and they thought that [the] house they bought also had room for a second system. That's what they bargained for. That is not what they received . . . ." [4] Accordingly, the trial court ordered the Vincents to repurchase the property for the original contract price of $104,500 and to pay the costs of the closing of this transaction. The trial court declined to award punitive damages or attorney's fees and declined to deduct the fair rental value of the property for the time the Faynes lived in the house from the repurchase price because no proof had been submitted on these issues.[5]

The Faynes appealed to the Court of Appeals, challenging, among other things, the trial court's refusal to award attorney's fees. The appellate court remanded the case to the trial court with directions to consider closing costs, mortgage interest, real estate taxes, prejudgment interest, fair rental value of the house, and other issues pertinent to restoring the Faynes to their pre-contract position. *Fayne I*, 2004 WL 1749189, at *5. The Court of Appeals also directed the trial court to state specifically on which of the Faynes' causes of action—violation of the Tennessee Consumer Protection Act or common-law misrepresentation—it had based its judgment. *Fayne I*, 2004 WL 1749189, at *5. No appeal was taken from this decision.

The trial court received the Court of Appeals' mandate on October 14, 2004. The next day, the Faynes requested that the issues remanded by the Court of Appeals be referred to a special master. On January 5, 2005, the trial court entered an agreed order appointing a special master and directing the master to hear evidence and file a report regarding the calculations necessary to place the parties in the positions they would have occupied absent the sale. The special master conducted a hearing on January 27, 2005, and filed an "order of special master" on March 10, 2005. The special master determined that the Vincents should be required to pay the Faynes $120,691.31. In addition, the spe-

---

4. The record on appeal does not contain the transcript or a statement of the evidence of the 2002 trial. Apparently, conflicting testimony was presented at this trial regarding whether the problem with the septic system could be solved with the addition of a separate system in the back of the home.

5. The trial court stated:
 I'm declining to order punitive damages. There is no direct proof of incidental damages other than that they have incurred attorney fees. I do not have any proof as to what, exactly how much they are or how much is reasonable and necessary. That requires some expert proof. Before the plaintiffs get a little upset about that, they need to realize that the defendants would have been entitled to an offset from that original purchase price because you-all had a place to live for five years that you would have had to deduct from the rent. I don't find any proof in the record to deal with that issue either.

cial master determined that the Vincents had not violated the Tennessee Consumer Protection Act. He also declined to award the Faynes attorney's fees or prejudgment interest.

The Faynes objected to the special master's report and requested a hearing before the trial court. On August 25, 2005, the trial judge, who had presided over the case since it was filed in 1998, stepped aside and assigned the case to another judge. Following a hearing, the new judge filed a memorandum opinion on December 11, 2006. The trial court first determined that the special master did not have the authority to decide whether the Vincents had violated the Tennessee Consumer Protection Act. Based on the finding made by the original trial judge in 2002, the trial court concluded that the Vincents were subject to the Tennessee Consumer Protection Act because they were "a developer and realtor, respectively" and determined that the original trial judge's findings provided a basis for concluding that they had violated the Tennessee Consumer Protection Act.

Accordingly, the trial court affirmed the special master's award of $120,691.31. In addition, the trial court awarded the Faynes prejudgment interest and $37,483.93 in attorney's fees. On February 8, 2007, the trial court denied the Vincents' motion to alter or amend the judgment. The Court of Appeals affirmed the trial court's December 11, 2006 judgment. *Fayne II*, 2008 WL 657849, at *7. The Vincents thereafter filed a Tenn. R.App. P. 11 application for permission to appeal, raising two issues: (1) whether the Tennessee Consumer Protection Act applied to them because the transaction involved the sale of their personal residence, and (2) whether the evidence supports the trial court's conclusion that they had engaged in unfair or deceptive practices with regard to the sale of their house.

## II.

The issues raised by the Vincents in this case include one question of law and two questions of fact. The question of law concerns whether the Tennessee Consumer Protection Act covers the sale of a personal residence by the owners of the residence. The two questions of fact involve whether the evidence supports the trial court's conclusion that the sellers in the case are subject to the Tennessee Consumer Protection Act and, if so, whether their conduct amounted to an unfair or deceptive practice prohibited by the Act.

"The construction of a statute and its application to the facts of a case are questions of law." *Borner v. Autry*, 284 S.W.3d 216, 219 (Tenn.2009); *see also U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn.2009). We review a trial court's conclusions with regard to questions of law de novo with no presumption of correctness. *Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn.2009); *Chattanooga–Hamilton County Hosp. Auth. v. Bradley County*, 249 S.W.3d 361, 365 (Tenn.2008); *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 307 (Tenn.2008).

On the other hand, a trial court's findings of fact in a non-jury civil trial are reviewed de novo upon the record, with a presumption of the correctness of the finding, unless the evidence preponderates otherwise. Tenn. R.App. P. 13(d); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn.2009); *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Our ability to review the evidentiary record de novo is hampered when the record on appeal contains neither a transcript nor a statement of the evidence of the trial. Thus, when an issue of sufficiency of the evidence is raised on appeal, we

must presume, in the absence of a record of the proceedings, that the transcript or statement of the evidence, had it been included in the record, would have contained sufficient evidence to support the trial court's factual conclusions. *Kincaid v. Bradshaw,* 65 Tenn. 102, 103 (1873); *Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn.Ct.App.1992).

■ Concurrent findings of fact made by the chancellor and special master and supported by material evidence are binding upon the appellate court. Tenn.Code Ann. § 27–1–113 (2000). However, issues not proper to be referred, findings based on an error of law, mixed questions of fact and law, and findings unsupported by material evidence are not. *In re Estate of Ladd,* 247 S.W.3d 628, 636 (Tenn.Ct.App. 2007).

■ Whether a particular act is unfair or deceptive is a question of fact. *See Gaston v. Tenn. Farmers Mut. Ins. Co.,* 120 S.W.3d 815, 822 (Tenn.2003) (holding that trial court erred in granting directed verdict because "a jury could reasonably conclude that [the defendant's] conduct was unfair or deceptive" under the Tennessee Consumer Protection Act); *Helton v. Glenn Enters., Inc.,* 209 S.W.3d 619, 629 (Tenn.Ct.App.2006); *Tucker v. Sierra Builders,* 180 S.W.3d 109, 116 (Tenn.Ct. App.2005) (concluding that "whether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact"); *Paty v. Herb Adcox Chevrolet Co.,* 756 S.W.2d 697, 699 (Tenn.Ct.App.1988). *Cf. Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 926 (Tenn.1998) (affirming trial court's dismissal of Tennessee Consumer Protection Act claim when record held no evidence of any unfair or deceptive acts by defendant).

## III.

■ We will first address the Faynes' assertion that the Vincents should not be permitted to argue on this appeal that the Tennessee Consumer Protection Act does not apply to the 1997 sale of their personal residence. Citing *Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 153 (Tenn.1991), the Faynes insist that issues not raised in the trial court cannot be raised for the first time on appeal. While this long-standing jurisprudential rule has salutary effects on appellate practice, we have determined that it should not be invoked in this case.

There is no question that one of the Faynes' causes of action against the Vincents was based on the Tennessee Consumer Protection Act. It is equally clear that the Vincents responded to this claim by denying in paragraph eight of their answer "that this particular sale is governed by the Tennessee Consumer Protection Act or that the Tennessee Consumer Protection Act is applicable in this particular set of circumstances." Thus, at least as far as the parties' pleadings are concerned, it is clear that the parties joined issue with regard to the application of the Tennessee Consumer Protection Act to the transaction at the heart of this case.

Even though the battle lines were clearly drawn in the pleadings, the absence of a record makes it difficult to ascertain the strategies that the parties actually pursued in their respective legal campaigns. It may very well be that, as this case progressed, both the parties and the trial court never returned to the question regarding whether the Tennessee Consumer Protection Act applied to this transaction. Without a record, there is no way to determine reliably whether the parties contested this issue, whether the Vincents abandoned their denial of the Act's applicability, or whether the trial court in the

first proceeding simply never reached the issue because it had decided the case based on other grounds.

The jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver. *See In re M.L.P.*, 281 S.W.3d at 394 (holding that a party who did not properly raise an issue in the trial court "has waived his right to argue this issue for the first time on appeal"); *Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007) (holding that an issue raised for the first time on appeal is waived); *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn.1996) (holding that "issues raised for the first time on appeal are waived"). One of the corollaries of the waiver doctrine is that the party asserting waiver has the burden of proof. *Ky. Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 499 (Tenn.Ct.App.1999) (analyzing waiver of contractual right); *Koontz v. Fleming*, 17 Tenn.App. 1, 8, 65 S.W.2d 821, 825 (1933) (analyzing waiver of a widow's right of action).

Like the Tennessee Rules of Appellate Procedure, this Court's jurisprudential rules should be interpreted and applied in a way that enables appeals to be considered on their merits. *See* Tenn. R.App. P. 1. While we endorse the continuing vitality and validity of the principle that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court, we also hold that the party invoking this principle has the burden of demonstrating that the issue sought to be precluded was, in fact, not raised in the trial court. *See Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 783 (Tenn.2000) (plac-

ing the burden of persuasion on the party having the affirmative of the issue); *Smith v. Smith*, 989 S.W.2d 346, 348 (Tenn.Ct. App.1998) (placing the burden of proving the waiver of the right to appeal on the party claiming that the opposing party had waived its right to appeal).

In this case, the Faynes have the burden of demonstrating that the Vincents did not take issue with the application of the Tennessee Consumer Protection Act to the 1997 transaction until their appeal from the trial court's December 11, 2006 memorandum opinion. The Vincents clearly contested this issue in the answer they filed in April 1998, and in light of the ambiguity with regard to the later proceedings caused by the lack of a complete record,[6] we decline to find that the Faynes have successfully demonstrated that the Vincents either did not contest or abandoned the issue of the application of the Tennessee Consumer Protection Act to the sale of their house in the proceedings below.

## IV.

In deciding whether the Tennessee Consumer Protection Act applies to the Vincents, a real estate agent and developer engaged in the sale of their own home, we must determine if this was a sale affecting "the conduct of any trade or commerce." Tenn.Code Ann. § 47–18–104(b). If the Vincents sold their personal residence "in the course of the real estate trade" or if they were "in the business of selling property as owners or brokers," then they are covered by the Tennessee Consumer Protection Act. *Ganzevoort v. Russell*, 949 S.W.2d 293, 297, 298 (Tenn. 1997). We conclude that because the Vincents were acting in a business capacity

---

6. Reviewing the record is an essential step in determining whether a party is attempting to raise an issue for the first time on appeal.

*See Wilson v. Esch*, 166 S.W.3d 729, 730–31 (Tenn.Ct.App.2004).

when they sold the home, the sale is covered by the Tennessee Consumer Protection Act and that the Vincents are liable under the Act for any deceptive acts they committed in attempting to sell the home.

The Federal Trade Commission Act and other consumer protection laws were passed as a response to the inability of the common-law tort system to protect consumers in many everyday circumstances. While the traditional rule of caveat emptor was deemed sufficient to mete out justice in a world where consumers and merchants were on relatively equal footing, the development of sellers into larger entities called the justice of this approach into question. Dee Pridgen, *Consumer Protection and the Law* § 1:1, at 1–1 to 1–2 (2002) (hereinafter *"Consumer Protection and the Law"*). Statutes aimed at protecting consumers from deceptive acts began to proliferate in the mid–1960s, and such laws have been passed in all fifty states, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands. Jonathan Sheldon et al., *Unfair and Deceptive Acts and Practices* § 1.1, at 1 (5th ed. 2001) (hereinafter *"Unfair and Deceptive Acts and Practices"*).[7] These acts are not, however, marked by their uniformity.[8] *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 352–54 (Tex.App.2003) (listing differences relating to private rights of action, class action suits, statutes of limitations, violations, scienter, reliance, and exemplary damages); *Consumer Protection and the Law* § 1:1, at 1–4.

The Tennessee Consumer Protection Act, enacted in 1977, was passed, in part, to protect consumers from unfair and deceptive acts and practices occurring "in the conduct of any trade or commerce" in the state and to provide a means "for maintaining ethical standards of dealing between persons engaged in business and the consuming public." Tenn.Code Ann. § 47–18–102(2), –102(4). The Act is to be liberally construed in order to enable it to protect the consumer and to promote the other policies which motivated its passage. Tenn.Code Ann. § 47–18–102; *Myint v. Allstate Ins. Co.*, 970 S.W.2d at 926; *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn.1992); *see also* Tenn.Code Ann. § 47–18–115 (noting that the Act is "remedial legislation" which should be construed to effectuate its purposes). It is also to be construed consistently with the Federal Trade Commission and federal courts' interpretations of the Federal Trade Commission Act. Tenn.Code Ann. § 47–18–115.

 The Tennessee Consumer Protection Act forbids "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn.Code Ann. § 47–18–104(b). The Act covers the transfer of real property and applies to the Faynes, who fall under the definition of "consumer" provided by the Act.[9] *See Gan-*

7. Alternate terminology for such statutes includes "unfair and deceptive trade practices acts," "consumer protection laws," "consumer fraud acts," *Consumer Protection and the Law* § 3:1, at 3–2 to 3–3, n. 1, "consumer sales acts," "unfair trade practices acts," "deceptive consumer sales acts," "deceptive trade practices acts," and "Little FTC Acts." *Unfair and Deceptive Acts and Practices* § 1.1, at 1.

8. For instance, certain states use the presence of a threat to the public interest to determine applicability of a consumer protection statute.

*Consumer Protection and the Law* § 4:3, at 4–11. *See, e.g., Zeeman v. Black*, 156 Ga.App. 82, 273 S.E.2d 910, 915 (1980); *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 351 S.E.2d 347, 350–51 (S.C.Ct.App.1986).

9. Tenn.Code Ann. § 47–18–103(2) defines "consumer" as "any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and

zevoort v. Russell, 949 S.W.2d at 297. It is less clear what the seller's role must be in order for the alleged violation to constitute "the conduct of any trade or commerce." The Act defines "trade," "commerce," or "consumer transaction" as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Tenn.Code Ann. § 47–18–103(11). Relying in part on the Act's purpose of "maintaining ethical standards of dealing *between persons engaged in business* and the consuming public," Tenn.Code Ann. § 47–18–102(4) (emphasis added), courts have limited the Act's application to "transactions between businesses and consumers and not to casual, non-commercial transactions between two individuals." *White v. Eastland,* No. 01A01–9009–CV–00329, 1991 WL 149735, at *3 (Tenn.Ct. App. Aug.9, 1991) (No Tenn. R.App. P. 11 application filed).

█ In the context of a sale of real property, real estate agents and brokers selling houses "in the course of the real estate trade" are covered by the Tennessee Consumer Protection Act. *Ganzevoort v. Russell,* 949 S.W.2d at 297. However, we have also held that the Act does not apply to "sellers [who are] not in the business of selling property as owners or brokers" and, therefore, that "persons making an isolated sale of their home are not covered." *Ganzevoort v. Russell,* 949 S.W.2d at 298.

The seller in *Ganzevoort v. Russell* was a homeowner, not a builder, developer, or realtor. When a termite inspection revealed minor water damage underneath the house, the seller's real estate agent, with the seller's permission, arranged to

any other article, commodity, or thing of val-

have the damage repaired. *Ganzevoort v. Russell,* 949 S.W.2d at 294–95. The full extent of the damage was not known to the seller or the seller's agent and therefore was not revealed to the buyer. *Ganzevoort v. Russell,* 949 S.W.2d at 299. The Court held that the seller, as an individual engaged in a casual, isolated sale, was not covered by the Act, and that the seller's agent, while subject to the requirements of the Act, had not engaged in any unfair or deceptive acts. *Ganzevoort v. Russell,* 949 S.W.2d at 298–300.

The *Ganzevoort v. Russell* decision expressly disapproved the holding of *Klotz v. Underwood,* 563 F.Supp. 335, 337 (E.D.Tenn.1982), that an individual homeowner engaged in the sale of a residence as a one-time transaction may nevertheless be held liable under the Tennessee Consumer Protection Act. *Ganzevoort v. Russell,* 949 S.W.2d at 298 n. 3. While this Court did not delineate in *Ganzevoort v. Russell* exactly what qualifies as a casual or isolated sale, the most commonly understood meaning of the adjective "casual" in this context is "occasional," "occurring without regularity," *Black's Law Dictionary* 231 (8th ed. 2004), or "non-recurring." *S & M Fin. Co. Fort Dodge v. Iowa State Tax Comm'n,* 162 N.W.2d 505, 508 (Iowa 1968). Other courts have characterized "casual" as the antonym of "regular." *Bankers & Shippers Ins. Co. of N.Y. v. Blackwell,* 260 Ala. 463, 71 So.2d 267, 270 (1954); *Heckman v. Warren,* 124 Colo. 497, 238 P.2d 854, 860 (1951) (en banc). For the purposes of this case, a casual sale or transaction is an occasional and isolated sale or transaction by a person who does not hold himself or herself out as being regularly engaged in business or commerce involving the goods, property, or services involved in the sale or transaction.

ue wherever situated."

Following our decision in *Ganzevoort v. Russell*, the Court of Appeals has been called upon on two occasions to address the application of the Tennessee Consumer Protection Act to the sale of a personal residence. In the first case, the seller, while not in the business of building or selling homes, acted as his own general contractor in the construction of his personal residence on Signal Mountain. The purchaser filed suit against the seller, alleging that he had violated the Tennessee Consumer Protection Act by failing to disclose various defects in the house or that the house had never passed inspection. *Murvin v. Cofer*, 968 S.W.2d 304, 307 (Tenn.Ct.App.1997). The Court of Appeals held that the Tennessee Consumer Protection Act did not apply to the transaction because the seller was not engaged in the business of selling houses. *Murvin v. Cofer*, 968 S.W.2d at 309.

More recently, the Court of Appeals considered another case in which the residence was owned by a real estate developer and his wife, who had occupied fifteen homes in seventeen years. *Abouelata v. Davis*, No. E2005–02616–COA–R3–CV, 2006 WL 3193685, at *6 (Tenn.Ct.App. Nov.6, 2006) (No Tenn. R.App. P. 11 application filed). On this occasion, the court determined that the applicability of the Tennessee Consumer Protection Act turned on the role that the sellers played in the transaction, i.e., whether the sellers were acting in a business or personal capacity. *Abouelata v. Davis*, 2006 WL 3193685, at *6. Relying on the fact that the house was the sellers' personal residence and on the absence of evidence that the seller husband's development company had built or owned the house, the Court of

Appeals concluded that the sellers "were not engaged in business when they sold their home," and, therefore, found that they could not be held liable under the Tennessee Consumer Protection Act. *Abouelata v. Davis*, 2006 WL 3193685, at *6.

 The Vincents submit that the Tennessee Consumer Protection Act does not apply to the transaction at issue in this case because they, like the sellers in *Abouelata v. Davis*, were acting in a personal capacity because the transaction involved the sale of their private residence. We adhere to the holding in *Ganzevoort v. Russell* that homeowners participating in the casual and isolated sale of their personal residence and not in the conduct of trade or commerce cannot be sued for damages under the Tennessee Consumer Protection Act. This principle applies to developers, contractors, and realtors who are selling their personal residence in a casual or isolated sale and who are not performing or providing professional services to facilitate or finalize the sale. However, we have also concluded that developers, contractors, and realtors cannot insulate themselves from liability under the Tennessee Consumer Protection Act simply by owning and briefly residing in a house before they offer it for sale as their personal residence.

 Whether or not the seller was engaged in the conduct of trade or commerce is a fact-intensive query that requires the courts to consider the totality of the circumstances. In determining if a transaction occurred in the course of trade or commerce,[10] we look to (1) the nature of

10. While the variation among consumer protection laws counsels us not to give inordinate weight to judicial interpretation in other jurisdictions, most consumer protection acts are limited in scope to deceptive practices occurring in the course of "trade or commerce," *Consumer Protection and the Law* § 4:5, at 4–16, and other courts' interpretations of the phrase are instructive.

the transaction;[11] (2) the character of the parties,[12] taking into account their occupations and sources of income;[13] (3) the activities the parties performed as part of the transaction[14] and their role in the transaction;[15] (4) the frequency with which the seller has engaged in similar transactions;[16] and (5) whether the motivation for the transaction was business or personal reasons.[17]

While the sale of a personal residence is generally indicative of an isolated, casual sale, the facts of this case, viewed in the aggregate, support the conclusion that the Vincents were not acting solely in their personal capacity when they sold their house to the Faynes. The Vincents were both in the business of selling houses.[18] In fact, the evidence demonstrated that they regularly and frequently sold the houses they were living in. In a two-year period, they lived in four different houses, at least two of which were in the Quail Run subdivision. In addition, Mr. Vincent was the

**11.** *See Feen v. Benefit Plan Adm'rs, Inc.*, No. 406726, 2000 WL 1398898, at *5 (Conn.Super.Ct. Sept.7, 2000); *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 905 P.2d 29, 38, 40 (1995); *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 907 (Me.1996); *Begelfer v. Najarian*, 381 Mass. 177, 409 N.E.2d 167, 176 (1980); *Hughes v. DiSalvo*, 143 N.H. 576, 729 A.2d 422, 424 (1999).

**12.** *See Feen v. Benefit Plan Adm'rs, Inc.*, 2000 WL 1398898, at *5; *Cieri v. Leticia Query Realty, Inc.*, 905 P.2d at 38, 40; *Binette v. Dyer Library Ass'n*, 688 A.2d at 907; *Begelfer v. Najarian*, 409 N.E.2d at 176; *Hughes v. DiSalvo*, 729 A.2d at 424.

**13.** *Colquette v. Zaloum*, No. E2003–02301–COA–R3–CV, 2004 WL 1924022, at *5 (Tenn. Ct.App. Aug.30, 2004) (No Tenn. R.App. P. 11 application filed) (noting that defendant "was not in the business of selling automobile dismantling businesses").

**14.** *See Feen v. Benefit Plan Adm'rs, Inc.*, 2000 WL 1398898, at *5; *Cieri v. Leticia Query Realty, Inc.*, 905 P.2d at 38, 40; *Binette v. Dyer Library Ass'n*, 688 A.2d at 907; *Begelfer v. Najarian*, 409 N.E.2d at 176; *Hughes v. DiSalvo*, 729 A.2d at 424.

**15.** *See Cieri v. Leticia Query Realty, Inc.*, 905 P.2d at 38, 40; *Binette v. Dyer Library Ass'n*, 688 A.2d at 907; *Begelfer v. Najarian*, 409 N.E.2d at 176.

**16.** *See AmBase Corp. v. SDG Inc.*, No. 3:00CV 1694(DJS), 2005 WL 1860260, at *26 (D.Conn. Aug.3, 2005); *Iadanza v. Mather*, 820 F.Supp. 1371, 1381 (D.Utah 1993); *Campbell v. Beak*, 256 Ga.App. 493, 568 S.E.2d 801, 805 (2002); *Cieri v. Leticia Query Realty, Inc.*, 905 P.2d at 38, 40; *Binette v. Dyer Library Ass'n*, 688 A.2d at 907; *Begelfer v. Najarian*, 409 N.E.2d at 176; *see also Mason v. Mortgage Am., Inc.*, 114 Wash.2d 842, 792 P.2d 142, 148 (1990) (en banc) (analyzing impact on public interest).

**17.** *See Feen v. Benefit Plan Adm'rs, Inc.*, 2000 WL 1398898, at *5; *Cieri v. Leticia Query Realty, Inc.*, 905 P.2d at 38, 40; *Binette v. Dyer Library Ass'n*, 688 A.2d at 907; *Begelfer v. Najarian*, 409 N.E.2d at 176; *Willen v. Hewson*, 174 N.C.App. 714, 622 S.E.2d 187, 192 (2005). In states that require an unfair or deceptive act to affect the public interest in order to be actionable, other courts have also considered the medium through which the act is introduced to the stream of commerce, *Zeeman v. Black*, 273 S.E.2d at 915; the breadth of the potential impact of the deceptive act on consumers, *Zeeman v. Black*, 273 S.E.2d at 915 (finding no potential impact on consumers for one-time sale of own residence); *Mason v. Mortgage Am., Inc.*, 792 P.2d at 148; and the unfair or deceptive act's potential for repetition, *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d at 350–51 (finding this determinative in analysis of impact on public interest); *Mason v. Mortgage Am., Inc.*, 792 P.2d at 148.

**18.** We approve of the *Abouelata* court's inquiry into whether the seller was acting in a business or personal capacity; however, unlike that court, we find that the frequency with which a homeowner changes residences and the homeowner's connection to the real estate industry are relevant to this inquiry. *See Abouelata v. Davis*, 2006 WL 3193685, at *6.

developer of the Quail Run subdivision in which the house was located and was also the builder of the house. For her part, Ms. Vincent admitted that she acted in a "dual capacity" in this transaction as both owner and listing agent, and there is no dispute that she split the real estate commission for the sale of the house with the Faynes' realtor.

The undisputed facts provide ample basis to conclude that the Vincents' business model included living in the houses that Mr. Vincent built and then listing them for sale. Ms. Vincent was undisputedly acting in a business capacity during this sale. Accordingly, the Vincents were not simply the sellers of a personal residence in this case. They were engaged in a commercial venture involving the sale of personal residences that Mr. Vincent constructed. Therefore, we conclude that the Tennessee Consumer Protection Act applies to the Vincents and that they are liable for any unfair and deceptive acts they may have committed in connection with the sale. Persons involved in the business of building or selling homes cannot, by spending a token period of time occupying a house, shield themselves from liability under the Tennessee Consumer Protection Act.

## V.

We turn next to the Vincents' assertion that, even if the Tennessee Consumer Protection Action applies to the sale of their house, their conduct with regard to the sale did not amount to an unfair or deceptive act proscribed by the Tennessee Consumer Protection Act. The Vincents insist that the lower courts erred by determining that they committed an unfair or deceptive act because (1) the septic system was not defective, (2) they did not know that the septic system was defective, and (3) they did not intend to deceive the Faynes regarding the condition of the septic system.

We have determined that neither the trial court nor the Court of Appeals erred, as a matter of fact or law, when they determined that the Vincents violated the Tennessee Consumer Protection Act with regard to their disclosures relating to the septic system.

### A.

The Vincents first assert that the evidence does not support the findings of the lower courts that the septic system in their house was malfunctioning and that, if the system was not malfunctioning, they could not have misled the Faynes with regard to the system's condition. This argument cannot succeed for two reasons. First, the trial court decided the issue regarding the defective condition of the septic system in the Faynes' favor in 2002, and this finding was affirmed by the Court of Appeals in 2004 in *Fayne I*. The Vincents did not seek further appellate review of this issue. Thus, the factual issue regarding the defective condition of the septic system has been finally resolved, and the Vincents cannot contest it now.

Second, the condition of the septic system is a question of fact. Even if the issue regarding the condition of the septic system were not foreclosed, we are in no position to review it at this stage of the litigation because the Vincents have not provided us with a record that would permit us to do so. The record on appeal does not contain the transcripts or statements of the evidence relating to the proceedings before the trial court or the special master. As we have already noted, in the absence of an evidentiary record, appellate courts will presume the record supports the lower courts' findings of fact. *Kincaid v. Bradshaw,* 65 Tenn. at 103; *Sherrod v. Wix,* 849 S.W.2d at 783.

## B.

■ The Vincents next argue that their conduct with regard to the sale of their house to the Faynes could not have violated the Tennessee Consumer Protection Act because they did not knowingly or intentionally misrepresent the condition of the house's septic system to the Faynes. They also insist that they made no negligent misrepresentations or omissions because they relied in good faith on the professional inspections of the sewer that revealed no leaks in the system. We have determined that the Vincents' failure to disclose to the Faynes the conditional approval of the septic system because of the setback violation and the problems with the septic system occurring in December 1996 constituted a violation of the Tennessee Consumer Protection Act.

■ The Tennessee Consumer Protection Act does not impose a single standard applicable to all cases for determining whether a particular act or practice is deceptive for the purpose of Tenn.Code Ann. § 47–18–104(b)(27). *Ganzevoort v. Russell,* 949 S.W.2d at 300. To be considered deceptive, an act is not necessarily required to be knowing or intentional. Negligent misrepresentations may be found to be violations of the Act. *Holladay v. Speed,* 208 S.W.3d 408, 416 (Tenn.Ct. App.2005); *Tucker v. Sierra Builders,* 180 S.W.3d at 115; *Smith v. Scott Lewis Chevrolet, Inc.,* 843 S.W.2d 9, 13 (Tenn.Ct.App. 1992); *see also* Jeff Mueller, *New Home Construction Liability,* Tenn. B.J., May 2007, at 18, 20. A deceptive act or practice is, in essence, "a material representation, practice or omission likely to mislead ... reasonable consumer[s]" to their detriment. *Ganzevoort v. Russell,* 949 S.W.2d at 299 (quoting *Bisson v. Ward,* 160 Vt. 343, 628 A.2d 1256, 1261 (1993)).

■ In a transaction involving the sale of real property, the seller has a duty to disclose to the buyer material facts that affect the property's value and that are not known or reasonably discoverable by a purchaser exercising ordinary diligence. *Simmons v. Evans,* 185 Tenn. 282, 285–86, 206 S.W.2d 295, 296 (1947); *Patel v. Bayliff,* 121 S.W.3d 347, 352–53 (Tenn.Ct.App. 2003). As a general matter, a party may be found liable for damages caused by his or her failure to disclose material facts to the same extent that the party may be held liable for damages caused by fraudulent or negligent misrepresentations. *Macon County Livestock Mkt., Inc. v. Ky. State Bank,* 724 S.W.2d 343, 349 (Tenn.Ct. App.1986). Thus, a seller's liability for the failure to disclose such material facts in a real estate transaction is coextensive with a party's liability for fraudulent or negligent misrepresentation. *Justice v. Anderson County,* 955 S.W.2d 613, 616–17 (Tenn.Ct.App.1997); *Wyner v. Athens Utils. Bd.,* 821 S.W.2d 597, 599 (Tenn.Ct. App.1991).

Our conclusion that an act need not be knowing or intentional to be considered deceptive for the purpose of the Tennessee Consumer Protection Act is bolstered by the federal courts' interpretation of Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a)(1) (West 2009). The federal courts have concluded that intent is not necessary to establish a violation of Section 5 of the Federal Trade Commission Act. *See, e.g., FTC v. Bay Area Bus. Council, Inc.,* 423 F.3d 627, 635 (7th Cir.2005); *FTC v. Freecom Commc'ns, Inc.,* 401 F.3d 1192, 1202 (10th Cir.2005); *FTC v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1029 (7th Cir.1988). The United States Supreme Court has held that "innocence of motive" did not relieve sellers of liability because "there is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepre-

sentation, however innocently made." *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655 (1934). The rationale for this is that "[t]he purpose of the statute is protection of the public, not punishment of a wrongdoer." *Gimbel Bros. v. FTC*, 116 F.2d 578, 579 (2d Cir. 1941) (finding that "[w]hether or not the advertiser knows the representations to be false, the deception of purchasers ... is the same"); *accord FTC v. Freecom Commc'ns, Inc.*, 401 F.3d at 1202. Therefore, a violation is judged by the likely effect on consumers rather than the intention of those making misrepresentations. *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d at 1202.

Other states have likewise declined to require intent on the part of the seller in finding violations of state consumer protection acts. *See, e.g., Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255 (Alaska 2007); *Cheshire Mortgage Serv., Inc. v. Montes*, 223 Conn. 80, 612 A.2d 1130, 1144 (1992); *State ex rel. Miller v. Pace*, 677 N.W.2d 761, 771 (Iowa 2004) (noting that statute required no intent to deceive or knowledge of falsity, but did require intent that others rely on omissions); *State v. Weinschenk*, 868 A.2d 200, 206 (Me.2005) (act may be deceptive regardless of good faith or lack of intent to deceive); *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676, 681 (2000) (good faith is not a defense); *Carter v. Gugliuzzi*, 168 Vt. 48, 716 A.2d 17, 24–25 (1998) (lack of intent and good faith not defenses); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 204 P.3d 885, 894 (2009) (en banc); *see also Consumer Protection and the Law* § 3:10, at 3–10 to 3–12, n. 23 (listing cases).

Based on the results of the dye tests, the Vincents may very well have believed in good faith that the septic system was not leaking. However, as the trial court found both in 2002 and again in 2006, the Vincents were aware of the possibility that the septic system might have been compromised by constructing the house in violation of the setback requirements, and they were also aware of the problems with the septic system that had occurred in December 1996—just one month before the Faynes first toured the house. The Vincents did not include the information regarding the conditional approval of the septic system caused by the setback violation on the residential property disclosure form they filled out in October 1996. Likewise, they did not inform the Faynes of the setback issues or of the problems that had manifested themselves in December 1996.

Whether the Vincents' failure to inform the Faynes of these matters was intentional or negligent, the result is the same. The Faynes bargained for a house with a properly operating septic system. As a result of the Vincents' failure to tell the Faynes all they knew about the septic system, material information about the house known by the sellers was kept from the purchasers. These omissions would be likely to mislead a reasonable consumer into believing that there were no problems with the septic system, even though the system was not functioning correctly. These sorts of omissions of material information can amount to a violation of the Tennessee Consumer Protection Act.

## VI.

In conclusion, we hold that the Tennessee Consumer Protection Act applies to the Vincents' acts in this case because they were acting in the conduct of trade or commerce when they sold their personal residence to the Faynes. Furthermore, we affirm the lower courts' determination that the Vincents' failure to disclose all the information they possessed regarding the house's septic system was a deceptive act

that gives rise to liability under the Tennessee Consumer Protection Act. Accordingly, we affirm the judgment of the Court of Appeals, and we remand the case to the trial court with directions to award the Faynes their reasonable attorney's fees incurred as a result of the appeal in this case. *See Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410 (Tenn. 2006). We tax the costs of this appeal to David Vincent and Teresa Vincent, and their surety, for which execution, if necessary, may issue.