IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 9, 2024 Session

## HOLLIE CHERRY v. LORI CHRISTINE MOSS ET AL.

**Appeal from the Juvenile Court for Shelby County**
**No. X6353    W. Ray Glasgow, Special Judge**

_____

**No. W2023-00146-COA-R3-JV**

_____

Grandmother appeals the denial of her petition for grandparent visitation, arguing that the trial court failed to apply the presumption of irreparable harm contained in Tennessee Code Annotated section 36-6-306(a)(5). Because Grandmother never asked the trial court to apply a rebuttable presumption of harm, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Steven G. Roberts, Collierville, Tennessee, for the appellant, Hollie Cherry.

Sabrina D. Ball, Memphis, Tennessee, for the appellee, Christopher Tyler Carter Huffman.

**MEMORANDUM OPINION[1]**

**I. PROCEDURAL AND FACTUAL BACKGROUND**

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On August 31, 2021, Petitioner/Appellant Hollie Cherry ("Grandmother") and her husband Roger Cherry filed a petition for grandparent visitation in the Shelby County Juvenile Court ("the trial court"). The petition was filed against Defendant Lori (Cherry) Wilson ("Mother")[2] and Defendant/Appellee Christopher Tyler Huffman ("Father"), who are the unmarried parents of the child at issue. The petition alleged that "the minor child resided in the home" of Grandmother and Mr. Cherry from his birth until around 2019 or 2020, and that "during the past two (2) years they kept the minor child in their home at least one weekend per month." However, Grandmother and Mr. Cherry further alleged that, beginning around May 2021, they were "unreasonably denied grandparent visitation" with the child. The petition therefore requested that the trial court grant them "grandparent's visitation rights" "pursuant to T.C.A. § 36-6-306[.]" Mr. Cherry filed a notice of voluntary nonsuit on May 10, 2021.

On or about May 11, 2022, a juvenile court magistrate entered an order granting Grandmother's petition for grandparent visitation based on a finding that "despite the dysfunctional relationship between the 'adults,' it appears to be in the best interest of [the child] that visitation be ordered." The magistrate also confirmed the voluntary dismissal of Mr. Cherry from the suit. According to the parties, a request for rehearing was thereafter filed on or about May 12, 2022.

On July 20, 2022, Grandmother filed a motion for contempt against Mother and Father after the child informed Grandmother that he did not want to visit with her during her scheduled visitation. Grandmother asked that she be awarded make-up visitation and attorney's fees in connection with the contempt.[3]

Father filed a pre-trial brief in opposition to the request for grandparent visitation on or about November 6, 2022. Re-hearing occurred on November 14, 2022. The trial court, a special judge presiding, eventually entered a corrected order denying Grandmother's petition on January 20, 2023, nunc pro tunc to December 20, 2022.

Therein, the trial court found that Mother and the child "remained in her family home with maternal grandparents for the next several years [after his birth]. There was no testimony that the child lived anywhere other than with maternal grandparents for the first years of his life." But the relationship between all of the parties eventually became strained when Mother moved out. Indeed, Mother and Grandmother were also engaged in litigation over visitation with a younger child. But "Grandmother's testimony revealed her inability to recognize and properly address the strained relationship between her and both of the child's parents and its negative impact and effect on the minor child."

---

[2] Mother has not participated in this appeal.

[3] It is not clear if this petition was ever resolved. *See **Baker v. State***, 417 S.W.3d 428, 435 (Tenn. 2013) ("Contempt proceedings are sui generis and are incidental to the case out of which they arise.").

Moreover, the trial court credited the testimony of the child's counselor, who "provided a straightforward recitation of the harm caused to the child by the conflict between the parents and grandparents, particularly the demeaning actions of maternal step-grandfather toward the child's father." The trial court also noted the counselor's recommendation that "the child should not be forced to visit other than at his choice and that forcing him to remain between the dysfunction of the parties was harmful." So the trial court found that the child "appeared to have suffered no harm from any lack of interaction with maternal grandparents over the course of the proceedings" and that "no proof has been presented that a lack of visitation between the child and maternal grandparents has or is likely to cause substantial emotional harm to the child." Thus, the trial court ruled that Grandmother failed to meet her burden and dismissed her petition. Finally, the trial court ruled that each party would pay their respective attorney's fees. This appeal followed.

## II. ANALYSIS

Grandmother raises a single issue in this appeal, which is taken from her brief: "The juvenile court judge misinterpreted T.C.A. § 36-6-306 (grandparent visitation statute) in failing to recognize the rebuttable presumption and erred in denying the petition for grandparent visitation[.]"

Grandparent visitation "raises a conflict between the parent's constitutional right to make decisions about the care and custody of the child and the grandparent's right to visitation under Tennessee Code Annotated section 36-6-306." ***Coleman v. Olson***, 551 S.W.3d 686, 697 (Tenn. 2018). As a result, the threshold inquiry in any grandparent visitation case is whether the child will suffer substantial harm in the absence of visitation with the grandparent. *See **McGarity v. Jerrolds***, 429 S.W.3d 562, 570 (Tenn. Ct. App. 2013). Grandparent visitation in Tennessee is governed by Tennessee Code Annotated section 36-6-306, which specifically incorporates the substantial harm requirement. *See generally* Tenn. Code Ann. § 36-6-306(b)(1) ("In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child.").[4]

The Tennessee General Assembly has recognized, however, that harm may be assumed in some situations. As such, our grandparent visitation statute reflects that a rebuttable presumption of "irreparable harm" may be present when "[t]he child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent, parents, or custodian[.]" Tenn. Code Ann. § 36-6-306(a)(5) (stating that "this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm

---

[4] Section 36-6-306 includes additional requirements that must be met for grandparent visitation to be ordered. We will not tax the length of this Opinion with consideration of requirements that are not at issue in this appeal.

to the child").

Father does not dispute that the child resided with Grandmother for a period of twelve months or more before he was removed from the home by Mother.[5] As such, Grandmother contends that the trial court erred in failing to apply a presumption of harm and placing the burden on Father "to rebut the presumption of substantial harm[.]"[6] Father asserts, however, that the trial court did not err in failing to apply the section 36-6-306(a)(5) presumption because Grandmother never raised it in the trial court. We agree.

"It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." ***Powell v. Cmty. Health Sys., Inc.***, 312 S.W.3d 496, 511 (Tenn. 2010) (citing ***Barnes v. Barnes***, 193 S.W.3d 495, 501 (Tenn. 2006)). The purpose of this rule is two-fold. First, because this Court's jurisdiction is appellate only, we are limited to consideration of only "those issues that have been formulated and passed upon in some inferior tribunal." ***State v. Bristol***, 654 S.W.3d 917, 925 (Tenn. 2022) (internal quotation marks, brackets, and citation omitted). Second, waiver promotes fairness in that it prevents one party from conducting trial by ambush and ensures that parties are "afforded an opportunity to fully develop their opposing positions on an issue." ***Id.*** (internal quotation marks and citation omitted). Moreover, by raising an issue in the trial court, a party allows the trial court to avoid or correct an error before the judgment becomes final. ***Id.***

"The party invoking [waiver] has the burden of demonstrating that the issue sought to be precluded was, in fact, not raised in the trial court." ***Fayne v. Vincent***, 301 S.W.3d 162, 171 (Tenn. 2009). We must therefore carefully review the record to determine whether a party is actually raising an issue for the first time on appeal. ***Powell***, 312 S.W.3d at 511 (citing ***Fayne***, 301 S.W.3d at 171). "The fact that the party phrased the question or issue in the trial court in a different way than it does on appeal does not amount to a waiver of the issue." ***Id.*** (citing ***Fahrner v. SW Mfg., Inc.***, 48 S.W.3d 141, 143 n.1 (Tenn. 2001)).

After our review of the record, we are convinced that Grandmother did not raise the presumption of irreparable harm contained in section 36-6-106(a)(5) to the trial court. First,

---

[5] The proof at trial was that the child lived with Mother and Grandmother for a period of approximately nine years following his birth.

[6] Grandmother appears to assert that if the section 36-6-306(a)(5) presumption applies, she has met her burden of showing substantial harm and the burden to prove a lack of substantial harm falls to Father. This Court has previously held, however, that the "substantial harm" generally required by the grandparent visitation statute is "substantial[ly] differen[t]" from the presumption of "irreparable harm" provided by section 36-6-306(a)(5). ***Larson v. Halliburton***, No. M2003-02103-COA-R3-CV, 2005 WL 2493478, at *5 (Tenn. Ct. App. Oct. 7, 2005). The distinction matters little in this case because, as discussed *infra*, Grandmother never asked for the trial court to apply any presumption and the proof shows that the child has suffered no harm, substantial or otherwise, due to the cessation of the grandparent-grandchild relationship.

- 4 -

we note that while Grandmother's complaint alleges that the child resided with her for several years, nothing in the complaint states or submits that this fact entitles Grandmother to a presumption of harm under 36-6-306(a)(5) or otherwise. While Father filed a pre-trial memorandum in which he asserted that Grandmother could not meet her burden to prove substantial harm, the record does not reflect that Grandmother also filed a pre-trial memorandum.

Finally, we have thoroughly reviewed the transcript of the final hearing in this case and can find no evidence that Grandmother asserted that she was entitled to a presumption of irreparable or substantial harm in any fashion during that hearing. Grandmother's counsel and the trial court did engage in a colloquy concerning the proof required under the grandparent visitation statute. During this discussion, Grandmother's counsel argued as follows:

> [W]e've established the significant relationship, and they are not required to use those words specifically.
>> The Court gets to look at the facts of the particular case, and that could lead you to believe that there is a significant relationship, and we don't have to prove that there is significant harm to the child.
>> They have to show that on the reverse side trying to prevent the visitation.

After the trial court stated that the burden was on Grandmother to prove substantial harm, Grandmother's counsel replied, "I respectfully disagree, and indicate Section 3 in that substantial visitation and severe emotional harm part says 'or' not 'and.'"

It is unclear what section Grandmother's counsel was referring to, but we assume that Grandmother's counsel was referring to subsection (b)(3),[7] which states as follows:

> A grandparent is not required to present the testimony or affidavit of an expert witness in order to establish a significant existing relationship with a grandchild or that the loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child. Instead, the court shall consider whether the facts of the particular case would lead a reasonable person to believe that there is a significant existing relationship between the grandparent and grandchild or that the loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child.

---

[7] Two other subsections could have been referenced, but they clearly have no relevance. *See* Tenn. Code Ann. § 36-6-306(a)(3) (involving a situation where "[t]he child's father or mother has been missing for not less than six (6) months"); Tenn. Code Ann. § 36-6-306(e)(3) (defining "grandparent" as "[a] parent of an adoptive parent").

Clearly, this subsection does not provide for the implementation of a presumption of harm in favor of the petitioning grandparent. Moreover, the transcript of the hearing as a whole contains absolutely no mention of either a presumption or subsection (a)(5). Thus, we must conclude that Father met his burden to establish that Grandmother failed to ask for the application of the presumption in the trial court.

This Court has previously held that an argument was waived under similar circumstances. In **Induction Techs., Inc. v. Justus**, the plaintiff asserted that the trial court failed to apply the conclusive presumption under Tennessee Code Annotated section 66-3-103.[8] 295 S.W.3d 264, 268 (Tenn. Ct. App. 2008). We held, however, that the applicability of the statute was waived because it was not timely raised. *Id.* at 268–69. The only difference here is that section 36-6-306(a)(5) involves a rebuttable presumption, rather than a conclusive presumption. But like the plaintiff in **Induction Techs.**, Grandmother here raised the possibility of the rebuttable presumption "too late" by raising it for the first time on appeal. *Id.* at 268. Because this argument was not first presented to the trial court, we cannot conclude that the trial court erred in failing to apply the rebuttable presumption under section 36-6-306(a)(5) to this case.

Regardless, in an abundance of caution, we have reviewed the proof presented at the final hearing in this cause to determine where the preponderance of the evidence lies on this issue. *See* **Coffee v. Peterbilt of Nashville, Inc.**, 795 S.W.2d 656, 658 n.1 (Tenn. 1990) ("It is the duty of this Court to apply the controlling law, for which there is a basis in the record, whether or not cited or relied upon by the parties."). *But see generally* **Bristol**, 654 S.W.3d at 927 (holding that the courts' discretion to consider unpreserved issues should be "sparingly exercised" (citation omitted)). After our review, we conclude that even if the presumption of irreparable or substantial harm were applicable in this case, Father presented sufficient proof to rebut the presumption. *Cf. generally* **Peirce v. Hope**, No. W2023-00621-COA-R3-CV, 2024 WL 2860911, at *8 (Tenn. Ct. App. June 6, 2024) ("[E]ven assuming arguendo that Grandmother was entitled to a presumption of harm in this case under section 36-6-306(a)(5), Father clearly rebutted the notion that there is a danger of irreparable or substantial harm resulting from an absence of visitation between the child and Grandmother.").

Here, the testimony of the child's counselor was that, not only would a lack of visitation with Grandmother not harm the child, but that forcing the child to visit Grandmother would continue to cause the child "significant stress and anxiety" that could

---

[8] This statute provides that

> Possession of goods and chattels continued for five (5) years, without demand made and pursued by due process of law, shall, as to the creditors of the possessor or purchasers from the possessor, be deemed conclusive evidence that the absolute property is in such possessor, unless the contrary appear by bill of sale, deed, will, or other instrument in writing, proved or acknowledged and registered.

worsen with additional contact. Although Grandmother attempts to undermine the counselor's testimony by pointing out that he was only visited in connection with the litigation and never met with her, the trial court clearly credited his testimony and gave his opinion considerable weight. *See* **Wells v. Tenn. Bd. of Regents**, 9 S.W.3d 779, 783 (Tenn. 1999) ("[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary."). But even Grandmother and her additional witness testified that the child appeared to be doing well the last time they interacted with him, notwithstanding the lack of visitation with Grandmother. So then, even assuming, arguendo, that the trial court erred in not applying a presumption of irreparable or substantial harm, we conclude the result would be the same in this case: a finding of no substantial harm that is fatal to Grandmother's request for grandparent visitation. As such, Grandmother has not shown any reversible error in the trial court's decision. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process[.]").

### III. CONCLUSION

The judgment of the Shelby County Juvenile Court is affirmed, and this cause is remanded to the trial court for further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Hollie Cherry, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE