IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 19, 2012 Session

**EDWARD HANSON**

v.

**J.C. HOBBS COMPANY, INC.**

**Appeal from the Chancery Court of Henry County**
**No. 08CI20751   Ron E. Harmon, Chancellor**

_____

**No. W2011-02523-COA-R3-CV - Filed November 21, 2012**

_____

This case arises out of the sale of a tractor. The plaintiff purchaser bought a tractor online from the defendant company, which specializes in the sale of tractors. The company advertised the tractor as having many fewer hours of use than it actually had. After taking possession of the tractor and learning the tractor's true condition, the purchaser filed this lawsuit against the company, alleging breach of contract, fraudulent misrepresentation, rescission, and violation of the Tennessee Consumer Protection Act. After a bench trial, the trial court held in favor of the purchaser, and awarded compensatory damages and attorney fees. The company now appeals, arguing *inter alia* that the evidence does not support an award of compensatory damages under the Tennessee Consumer Protection Act. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Jason G. Howell, Murray, Kentucky, for Plaintiff/Appellee Edward Hanson

George Robert Whitfield, III, and W. Brown Hawley, II, Paris, Tennessee, for Defendant/Appellant J.C. Hobbs Company, Inc.

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Edward Hanson ("Hanson") lives in Clifton, Illinois and has worked there as a farmer his entire adult life. Hanson works on his family farm with his brother and his son.

After determining that he needed to purchase a tractor, Hanson and his son spent about three weeks researching used tractors online. In February 2007, Hanson and his son found a 1995 John Deere 8400 tractor for sale, advertised on eBay by Defendant/Appellant J.C. Hobbs Company, Inc. ("Hobbs Co."). The eBay ad was entitled: "**JOHN DEERE 8400 MFWD/LOW HOURS/NR!!!!!**" (emphasis in original). The description in the ad emphasized that the tractor had "low hours" of usage:

> HERE'S THE LAST ONE WE HAVE,, ,,, AS WITH ALL OF THEM WE'LL START THE BID OUT LOW TO GIVE YOU ALL A SHOT,,,
>
> WE HAVE A NICE 8400 JOHN DEERE, 4X4, POWER SHIFT, **LOW HOURS!!!**,,,SHOWING ON THE METER,, . . . WE'VE BEEN ASKING $70,000 FOR IT ,,,, MINUS THE NEW RUBBER IT NEEDS... OR IT WILL SELL TO THE HIGHEST BIDDER ON EBAY!!!!!
>
> THIS TRACTOR HAS 20-30% RUBBER LEFT ON IT.. IT'S HAD SOME ROAD TRAVEL TIME ON IT,,, THE INTERIOR LOOKS REAL GOOD , IT HAS ONE SMALL TEAR IN THE LEFT CORNER POST, AND ONE TINNSY TEAR IN THE LEFT SIDE PIECE OF UPHOLSTERY, IT HAS A 16 SPEED POWER SHIFT TRANS, AND 4 REVERSES, IT SHIFTS FLAWLESSLY,, THE SEAT LOOKS GREAT!!, HEAD LINER LOOKS GREAT, IT'S GOT AN AM/FM RADIO,, IT WORKS!!!,,,,,, IT HAS REAR REMOTES,,,, IT'S SHOWING NO OIL LEAK AT THE PRESENT TIME,, . . .
> IT HAS 20.8 REAR RUBBER,, FIRESTONE RADIALS, AND IT WILL SOON NEED TO BE REPLACED,, THIS IS THE ONLY DOWN SIDE TO THIS ONE,, POOR RUBBER,,, THE REST IS FINE.
>
> NICE LOOKING 225 HP,, **LOW HOUR** 4X4, 8400 JOHN DEERE TRACTOR,,,, WE OFFER SHIPPING US WIDE,, THIS ONE WILL COST $2.50 A LOADED MILE......
>
> SOLD AS IS WHERE IS NO WARRANITE [sic] IMPLIED OR EXPRESSED, IN THE STATE OF TENNESSEE,,, . . . .

(emphasis in original). The phrase "LOW HOURS" appeared in the advertisement three separate times. For two of those, it was bolded and in larger font than the rest of the advertisement. The advertisement stated the number of hours on the tractor as 2506 and

included several photographs, including one showing the tractor's hour meter displaying the number "2506." The eBay description stated that the tractor needed new tires. It did not include a serial number.

Hanson placed an online bid on the tractor. He then called Mr. J.C. Hobbs of Hobbs Co. to ask some questions, including an inquiry as to the missing serial number. In response to Hanson's telephone question, Mr. Hobbs supplied a serial number. Using the serial number he had been provided, Hanson researched the tractor further before continuing to bid on it. From his research, Hanson estimated that new tires for the tractor would cost about $8000. Eventually, Hanson purchased this tractor for $55,600.

Prior to shipping the tractor, and prior to Hanson's payment for it, Hobbs Co. faxed Hanson a sales contract. The contract contained this disclaimer: "Buyer hereby certifies the Seller does not represent the tractor or equipment hours as accurate." The contract also included a clause stating that if Hanson filed a legal action against Hobbs Co., Hanson would "be responsible for payment of Seller[']s attorney fees, court costs and litigation expenses." Hanson signed this contract and faxed it back to Hobbs Co. After receiving Hanson's certified check, Hobbs Co. delivered the tractor to Hanson's farm in Illinois.

Before the delivery truck even left his farm, Hanson could see some problems with the tractor. He made several unsuccessful attempts to call Mr. Hobbs; after a while, the delivery truck left. Hanson attempted to make several repairs to the tractor, and in the course of doing so, learned that Mr. Hobbs had given him an incorrect serial number. Hanson also learned, to his dismay, that the tractor actually had 10,000 more hours than was shown on the hour meter featured in the eBay advertisement.

Finally, in April 2008, Hanson filed the instant lawsuit against Hobbs Co. in the Chancery Court of Henry County, Tennessee. The claims in the complaint were based on the fact that the tractor had 10,000 more hours than was shown on the hour meter in the eBay advertisement, as well as the missing/incorrect serial number. The complaint alleged that Hobbs Co. breached its contract with Hanson; violated the Tennessee Consumer Protection Act ("TCPA"); and fraudulently misrepresented the use and condition of the tractor. The complaint sought compensatory damages, treble damages under the TCPA, and attorney fees. In the alternative, the complaint sought rescission of the contract. Hobbs Co. filed an answer, denying liability and seeking its attorney fees and expenses.

A bench trial was held in August 2011. The trial court heard testimony from Hanson, and Hobbs, as well as each party's expert witness.

Hanson testified at the outset. He said that he had considerable experience with tractors, and over the course of his farming career had owned approximately ten of them. To maintain his farm, Hanson said that he will typically put approximately 300-400 hours on a tractor per year. Before buying the tractor at issue in this lawsuit, Hanson said, he had never bought a tractor at an online auction. When Hanson saw the Hobbs Co. eBay ad, he was particularly drawn to the fact that the advertised tractor was the John Deere 8400 model and that it had a low number of hours on it. Asked whether he attributed any significance to the fact that the ad said that the tractor had low hours "showing on the meter," Hanson said he did not. Hanson said that he would not have been interested in purchasing a tractor with 12,500 hours on it, and if he had purchased such a tractor, he would have paid no more than $25,000 for it. Based on his research, and taking into consideration that the tractor would need new tires, Hanson believed that $64,000 was a fair price for this tractor as advertised in the eBay ad.

After Hanson made his first online bid, he became concerned that the eBay ad listed no serial number for the tractor. He called Hobbs Co. about this before placing a follow-up bid on the tractor. Hanson said that Mr. Hobbs told him that this was a low hour tractor and that it was really in good shape. Hanson asked Mr. Hobbs why the tires were in such poor condition given the low hours on the tractor, and Mr. Hobbs explained that the tractor had done a lot of roadwork. Hanson testified that Mr. Hobbs gave him a serial number during that telephone call, and he used the serial number to research the tractor before bidding further on it. After submitting the winning online bid for the tractor, Hanson called Hobbs Co. and made arrangements for payment. The sales contract was sent to him, and he signed it and returned it. Seven or eight days later, the tractor was delivered to Hanson's farm in Illinois.

When the tractor arrived, Hanson said, it did not look as good as the photos in the eBay ad. Until the tractor arrived, Hanson was not aware that the serial number plate on the tractor was missing. This concerned Hanson because the banker who loaned Hanson the money to purchase the tractor had requested the serial number, and Hanson had given the banker the serial number that Mr. Hobbs had supplied him over the telephone. Hanson also immediately noticed that the steering on the tractor was very loose. While the delivery truck was still at his farm, Hanson tried several times to call Mr. Hobbs, to no avail. Later, when Hanson eventually spoke to Mr. Hobbs, he reassured Hanson that the missing serial number was not a matter of great concern. Mr. Hobbs claimed that the serial number he gave Hanson during the initial telephone call was based on the etchings on the tractor where the missing serial number plate used to be.

In early April 2007, Hanson discovered several other problems with the tractor. When he tried to order parts to fix the tractor, he could not find parts that fit it. Stumped, Hanson called a tractor mechanic and salesperson, Lester Hegg, who determined that the serial

number Mr. Hobbs had given Hanson did not go with that tractor. Hegg was able to determine the correct serial number for the tractor, the details of its original purchase, and how it had been used. In this way, Hanson learned that the tractor had 12,500 hours on it, rather than the 2,500 hours shown on the tractor's hour meter.

Hanson called Mr. Hobbs and told him that he had determined the correct serial number for the tractor and that it had 10,000 hours more than had been indicated in the Hobbs Co. advertisement. He asked Mr. Hobbs what the company planned to do about these problems. At first Mr. Hobbs told Hanson he would get back to him, and then later stopped accepting Hanson's telephone calls.

Hanson said that he had been left with the impression that Hobbs Co. would buy back the tractor. Consequently, in the meantime, Hanson used the tractor on his farm, and just did his best to repair it so that it would be suitable for use. Between April 2007 and February 2008, he spent $22,536.41 on repairs to the tractor. In addition, Hanson and his son spent 30 to 40 hours making repairs to the tractor; Hanson valued their labor at $15 per hour. Hanson put approximately 450 hours on the tractor, using it on his farm. Eighteen months after he bought the tractor from Hobbs Co., Hanson finally traded it in to purchase another tractor. He received a $42,500 credit toward the purchase; Hanson's new tractor was valued at $155,500. Overall, Hanson estimated his total losses on the Hobbs Co. tractor at $35,000 to $40,000, factoring in the purchase price, money spent to repair it, and time invested in it.

Hanson offered the testimony of Lester Hegg ("Hegg") as an expert. Hegg said that he had approximately 34 years of experience working with John Deere tractors, as a mechanic and as a salesman. Hegg said he had also occasionally appraised tractors. At the time of trial, Hegg was working at a John Deere dealership in Melvin, Illinois. Hegg helped Hanson ascertain the correct serial number and the true number of hours of usage on the tractor purchased from Hobbs Co. Hegg said he discerned the true number of hours on the tractor by using a technique of diagnostic assessment that was common knowledge for tractor mechanics, though not widely known among tractor consumers such as farmers.

Hegg contrasted the value of the tractor as advertised by Hobbs Co. with the value of the tractor with the true number of hours of usage. As advertised on eBay, Hegg estimated the value at approximately $60,000 without new tires and $70,000 with new tires. The same tractor with approximately 12,000 hours, Hegg said, would be worth very little because a potential customer "would not have even been interested nor got [sic] involved with it . . . . [b]ecause of the amount of hours that was [sic] on it." Hegg explained that 10,000 additional hours on a tractor roughly equates to an additional 500,000 miles on a car. In fact, Hegg said, he'd never seen a tractor with as much as 12,000 hours on it. Nevertheless, Hegg

was able to get Hanson a trade-in value on the tractor of $42,500 because the global market and the farm economy changed between the time Hanson purchased the Hobbs Co. tractor and when Hanson traded it in. Hegg had found an overseas buyer for the tractor who was willing to buy the tractor at that price; he explained, and that enabled Hanson to trade it in at a higher value. Hegg opined that the repairs Hanson did on the tractor while he owned it were "reasonable and necessary" to keep it operating properly while he used it.

Mr. Hobbs testified on behalf of Hobbs Co. He said that the business of Hobbs Co. was the sale of construction and farm machinery, primarily tractors, mostly over the internet. On average, Hobbs Co. sold approximately 100-200 tractors per year, 30% to dealers and 70% to farmers. Hobbs Co. bought the tractor at issue from Mr. Hobbs' brother-in-law for $34,000, which included freight; the brother-in-law had bought the tractor at an auction for $29,500. Mr. Hobbs claimed that he had never dealt with a 8400-model John Deere tractor before buying this one. Prior to selling the tractor, Hobbs Co. made only cosmetic changes to it, such as painting the tractor and installing new upholstery in it. He rode in the tractor once and physically looked at the motor, but he did not examine the tractor's mechanical workings.

After making these cosmetic changes, Hobbs Co. then placed the tractor up for bid on eBay. Mr. Hobbs claimed that he put in the eBay advertisement everything he knew to be wrong with the tractor, including the fact that it had worn-out tires. Mr. Hobbs said that hundreds of people responded to the advertisement on eBay.

Mr. Hobbs acknowledged that the eBay advertisement for the tractor did not include a serial number. Mr. Hobbs claimed that he obtained the serial number he provided to Hanson by looking where the tractor's missing serial number plate had been and attempting to make out the etchings there. Mr. Hobbs said he told Hanson this when Hanson called him to ask why the serial number plate was missing. After this, Hobbs Co. did not hear from Hanson for several months. Mr. Hobbs confirmed that the sales contract with Hanson stated expressly that Hobbs Co. did not certify the number of hours on the tractor as accurate. Mr. Hobbs indicated that this was a standard contractual provision for all of the tractors the company sold.

After some time, Hanson called Mr. Hobbs again and told him that the actual hours on the tractor were far more than what had been advertised, and that the serial number Mr. Hobbs had provided was not correct. Mr. Hobbs testified that he did not know how this happened; he said he had just looked at the hours shown on the tractor's meter and had attempted to make out the etchings for the serial number where the tractor's serial number plate had been.

Hobbs Co. called as its expert witness Henry Hobby, a sales manager for Tennessee Tractors, a John Deere dealership with nine store locations. Mr. Hobby worked 14 years for John Deere corporate in sales and marketing. Mr. Hobby explained how to ascertain a lost serial number for a tractor and how to determine the actual hours of usage for a tractor. He did not have personal knowledge of the specific tractor at issue in the lawsuit. Mr. Hobby said that selling a tractor without a serial number would be considered "poor ethics." This concluded the testimony at trial.

At the conclusion of the proof, the trial court issued an oral ruling. It found that the "difference between the hours advertised on the tractor and the actual hours on the tractor was deceptive to the purchaser." It held Hobbs Co. liable to Hanson in the amount of $24,686, and explained how it arrived at this figure. The trial court asked counsel for both parties if they desired any additional findings, to which both responded in the negative.

On October 19, 2011, the trial court entered a written order. The order included the trial court's oral ruling plus additional findings:

> 3. The Defendant is a merchant and dealer of the subject tractor in the course and scope of its business.
>
> 4. The Defendant had superior knowledge as to the value, condition, and other items with regard to tractors.
>
> 5. The Defendant advertised this subject tractor online on E-bay as advertising a John Deere 8400 tractor represented to have 2,506 hours that this tractor was a 1995 model and no serial number was given in the advertisement.
>
> 6. Plaintiff[']s witness Lester Haigh [sic] is qualified as an expert on this tractor.
>
> 7. In examination of the electrical control unit of this subject tractor by Mr. Haigh [sic] revealed that the tractor actually had 12,506 hours on it. The method of going into the electrical controls and retrieving this information is reliable and accepted.
>
> 8. There is no question from a review of the electrical control reading that this is the same tractor that Defendant sold Plaintiff through the E-bay advertisement.

9. Defendant testified that he sold 100-200 tractors a year.

10. A number or serial number stamped into the back housing of the tractor was obviously not installed by the manufacturer.

11. The difference in hours on the subject tractor as advertised and as actually existed was deceptive to the purchaser and entitles recovery by the Plaintiff.

The trial court's order also reaffirmed its judgment in favor of Hanson in the amount of $24,686. Consistent with the oral explanation given at the conclusion of the trial, the written order explained the calculation of damages as follows:

12. The difference between the price paid by Plaintiff at purchase and the actual value of the tractor was $20,000.00 at the time of purchase. The Plaintiff expended $22,536.00 on the tractor during his ownership, plus $600.00 of his own labor, for the total of $43,136.00.

13. The tractor was used for 450 hours by the Plaintiff. The court assesses a fair value of the use of these hours at the price paid for the tractor of $41.00 per hour based upon a division of the tractor's value by the number of hours in the tractor. The total amount of this 450 hours of use at $41.00 per hour equals $18,450.00, said amount to be deducted from Plaintiffs gross damages of $43,136.00.

14. The Plaintiff's total damages to be awarded in this matter are $24,686.00, said amount of damages calculated by deducting the $18,450.00 in usage allowance for the subject tractor from the $43,136.00 of gross damages.

15. The Court will award the Plaintiff a reasonable attorney's fee and the attorney should file an appropriate affidavit for the Court to consider in that regard.

16. Only compensatory damages are being awarded since the Court declines to award treble damages as there is no finding of any intentional or fraudulent act by the Defendant.

Hanson was awarded attorney fees and directed to file an appropriate affidavit.

-8-

After entry of this order, Hobbs Co. filed a "Motion to Reconsider." The motion was based on the assumption that the trial court's award to Hanson was made pursuant to the TCPA, in light of the trial court's finding that the advertisement on the tractor was "deceptive" as to the tractor's hours of usage. In the motion, Hobbs Co. argued that the TCPA did not apply in this case, so there was no basis for an award of either compensatory damages or attorney fees. In the alternative, Hobbs Co. argued that the trial court improperly included in the compensatory damage award the cost of replacement tires, because the need for new tires on the tractor was disclosed in the eBay advertisement.

A week prior to the hearing on the Hobbs Co. motion to reconsider, Hanson filed a sworn affidavit on his attorney fees and litigation expenses. The affidavit reflected a total of $6,019 in such attorney fees and expenses.

On November 15, 2011, the trial court held a hearing on the motion to reconsider. At this hearing, counsel for Hobbs Co. argued that the TCPA did not apply because the tractor was not a "good" within the meaning of the Act. On this basis, Hobbs Co. asked the trial court to set aside the award of compensatory damages, "[t]here being no other findings to support an award of damages." In the alternative, if the trial court deemed the TCPA to be applicable, counsel for Hobbs Co. stated: "[W]e would sincerely appreciate it if for the record the Court would specify the provisions or the particular subsection of the TCPA that authorized the private cause of action." The following exchange then ensued:

> THE COURT: Did I give each of you an opportunity to submit any proposed findings that you had that you–
>
> [COUNSEL FOR HANSON]: I believe that Mr. Hawley [co-counsel for Hobbs Co.] may have worked with you on the proposed findings. But as per the ruling from the bench –
>
> THE COURT: I generally give each side an opportunity to file – present to the Court any further findings that they request.
>
> [COUNSEL FOR HOBBS CO.]: Yes, Your Honor.
>
> THE COURT: I don't recall – I don't think I've received any request for findings.

[COUNSEL FOR HOBBS CO.]: There is no – I'm not sure if that was in the packet of information or not. But we would ask in this motion to reconsider that you would rule on this issue of whether or not the tractor is a good.

THE COURT: Your motion is overruled.

Hobbs Co. then filed its notice of appeal.

In February 2011, the appellate court determined that the trial court's order was not final, based on the trial court's failure to determine whether the contract was rescinded, enter an order awarding attorney fees and pre-judgment interest, and enter a written order adjudicating the motion to reconsider filed by Hobbs Co. The matter was remanded to the trial court for entry of a final order.

In response, in March 2012, the trial court entered an order of final judgment. The order stated that the trial court had considered the motion to reconsider filed by Hobbs Co. as both a Rule 52.02 motion to amend and a Rule 59.04 motion to alter or amend the October 2011 judgment. The trial court denied this motion as well as any *ore tenus* requests for clarification and for additional findings of facts and conclusions of law. The order awarded Hanson attorney fees and pre-judgment interest based on the affidavit Hanson filed in November 2011. The order also included an across-the-board dismissal of any remaining claims: "Any claims in [Hanson's] complaint not specifically addressed by this Court's Order filed on October 19, 2011, including [Hanson's] request for rescission of the contract underlying this action, are dismissed with prejudice." The appellate court then took up this appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Hobbs Co. presents the following issues:

I. Whether the Chancery Court erred as a matter of law in holding that the Tennessee Consumer Protection Act ("the TCPA") applied to the transaction at issue in this case [because a tractor does not fall under the statutory definition of "goods" under the TCPA][1]: the sale of a tractor by Appellant to Appellee for use in Appellee's business, trade, profession of farming.

_____

[1]This inserted language was not included in the Issues Presented for Review in the Hobbs Co. appellate brief; however it appears in the table of contents and the argument section of the brief.

II. If the TCPA applied to the transaction at issue in this case, whether the Chancery Court erred as a matter of law or a matter of fact in holding that the Appellant's advertisement was deceptive under the TCPA.

III. Whether the TCPA is the sole basis of recovery under the Chancery Court's Orders, and if not, whether the Chancery Court erred as a matter of law in [finding] any alternative holding that would entitle Appellee to recover.

IV. Whether the Chancery Court erred as a matter of fact in finding that the tractor at issue in this case had been used for 12,506 hours at the time of sale (as opposed to 2,506 hours as appeared on the tractor's hour meter).

V. If any damages were appropriately awarded to Appellee under any legal theory, whether the Chancery Court erred as a matter of law in calculating the damages, including by A) failing to account for the value received by Appellee when Appellee traded-in the tractor at issue in this case for a new tractor, and B) including the value of the tractor tires in the damage award although the advertisement clearly stated that the tractor tires required replacement.

VI. Whether the Chancery Court erred in awarding attorney's fees and discretionary expenses to Appellee.

Hanson rewords many of these same issues but raises no additional issues.[2]

Because this was a bench trial, we review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When the trial court's factual findings are based on its assessment of witness credibility, we will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed *de novo*, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

---

[2]Hanson raised no additional issues and did not request attorney fees on appeal.

ANALYSIS

**Rule 52.01**

At the outset, we must address the sufficiency of the trial court's findings of fact and conclusions of law under Rule 52.01 of the Tennessee Rules of Civil Procedure. Effective July 1, 2009, Rule 52.01 was amended to require trial courts to make specific findings of fact and conclusions of law in all cases:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

Tenn. R. Civ. P. 52.01 (2009). Under Rule 52.01 as amended, trial courts are required to issue findings of fact and conclusions of law, regardless of whether a request is made by the parties. "Without such findings and conclusions, this court is left to wonder on what basis the [trial] court reached its ultimate decision." *Heritage Operating, LP v. Henry County Propane Gas, Inc.*, No. W2011-01162-COA-R3-CV, 2012 WL 2989120, at *8; 2012 Tenn. App. LEXIS 479, at *23 (Tenn. Ct. App. July 23, 2012) (citing *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8; 2009 Tenn. App. LEXIS 225, at *22 (Tenn. Ct. App. May 15, 2009); *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19; 2004 Tenn. App. LEXIS 250, at *58 (Tenn. Ct. App. Apr. 21, 2004)).

In this case, the trial court did make some findings of fact and conclusions of law, but they were incomplete. The trial court's findings did not include, for example, a statement of the legal theory of recovery for the trial court's award of compensatory damages. In the hearing on the motion to reconsider filed by Hobbs Co., the trial court was explicitly asked to state whether the award was made pursuant to the TCPA and, if so, the subsection of the TCPA on which it was based. The trial court declined to do so. In light of the trial court's refusal to state the basis for its award, we must look at the findings of fact and conclusions of law the trial court did make, to determine whether they are sufficient for us to conduct our appellate review of the trial court's award.

Both parties' appellate briefs indicate that the most likely basis for the trial court's award is the TCPA. The catchall provision in the TCPA, Tennessee Code Annotated § 47-18-

104(b)(27), was specifically referenced in Hanson's complaint. At the time of the proceedings below, this subsection provided as follows:

> (b) [T]he following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
>
> \* \* \*
>
> (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person;

Tenn. Code Ann. § 47-18-104(b)(27)(2001).[3] As noted above, the statute says that, to be covered, the act or practice in question must "affect[] the conduct of . . . trade or commerce. . .." These terms are defined in Tennessee Code Annotated §47-18-103(19)[4] to mean "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated[.]" Tenn. Code Ann. § 47-18-103(19)(2012). We look first, then, at whether the trial court made findings on the required statutory elements for an award under subsection (27) of the TCPA.

This Court has discussed the elements necessary, in general, to prove a claim under the TCPA:

> In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." Tenn. Code Ann. § 47-

---

[3]In October 2011, Tennessee Code Annotated § 47-18-104(b)(27) was amended to provide that only Tennessee's Attorney General was vested with authority to enforce it. The subsection now states: "Engaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division." Tenn. Code Ann. § 47-18-104(b)(2012). **See** 2011 Tenn. Pub. Acts 510, at \*15; 2011 Tenn. Pub. Ch. 510; 2011 Tenn. HB 2008 (effective Oct. 1, 2011). This amendment applies to "all liability actions for injuries, deaths and losses covered by this act which accrue on or after [October 1, 2011]," so we apply the prior version of this statute to this case.

[4]At the time this lawsuit was filed, the terms "trade," "commerce", and "consumer transaction" were defined in Tenn. Code Ann. § 47-18-103(11) (2001). **See** 2010 Tenn. Pub. Acts 1055 (effective July 1, 2010) and 2010 Tenn. Pub. Acts 779 (effective April 16, 2010). To avoid confusion, we will refer to the current citation.

18-109(a)(1).  The defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court to award treble damages.  Tenn. Code Ann. § 47-18-109(a)(3); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 n. 13 (Tenn. 1999); *Holmes v. Foster Pontiac GMC, Inc.*, Shelby Law No. 9, 1989 WL 48515, at *4 (Tenn. Ct. App. May 10, 1989), perm. app. denied, (Tenn. Oct. 2, 1989); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 306 (Tenn. Ct. App.1984).

*Tucker v. Sierra Builders,* 180 S.W.3d 109, 115-16 (Tenn. Ct. App. 2005) (footnote omitted); *see also Wickham v. Sovereign Homes, LLC,* No. W2011-02508-COA-R3-CV, 2012 WL 4358635, at *6 (Tenn. Ct. App. Sept. 25, 2012).  The TCPA is applicable only to a transaction between a person engaged in business and a member of the consuming public, that is, the defendant in a TCPA claim must be "in the business of advertising, offering for sale, lease, or rental, or distributing goods, services, or property."  *White v. Eastland,* No. 01-A-019009CV00329, 1991 WL 149735, at *3 (Tenn. Ct. App. Aug. 9, 1991); *see also Campbell v. Teague,* W2009-00529-COA-R3-CV, 2010 WL 1240732, at *5; 2010 Tenn. App. LEXIS 238, at *16 (Tenn. Ct. App. Mar. 31, 2010) (citing *White*).

In this case, the trial court made findings that Hobbs Co. is "a merchant and dealer of the subject tractor," satisfying the requirement that the defendant in a TCPA claim be in the business of advertising and offering for sale the tractor at issue.  It also found that the "difference in hours on the subject tractor as advertised and as actually existed was deceptive" to Hanson, and that the deception resulted in monetary damages to Hanson.  The October 2011 order also stated that the trial court declined to make a "finding of any intentional or fraudulent act" by Hobbs Co., so it declined to award treble damages.  Overall, these findings meet the elements of a TCPA claim under subsection (b)(27).

We are puzzled by the trial court's specific refusal to state whether its award of damages was made pursuant to Section §47-18-104(b)(27), where such an explicit holding is mandated by Rule 52.01 in the absence of any request, but here was even requested by a party.  We have remanded for such findings in previous cases.  *See, e.g., Lake v. Haynes,* No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *5; 2011 Tenn. App. LEXIS 304, at *12-15 (Tenn. Ct. App. June 9, 2011).  On occasion, however, "when faced with a trial court's failure to make specific findings, the appellate courts may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'"  *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4; 2012 Tenn. App. LEXIS 592, at *11 (Tenn. Ct. App. Aug. 28, 2012) (citing *Burse v. Hicks*, No. W2007-02848-COA-R3-CV, 2008 WL 4414718, at *2; 2008 Tenn. App. LEXIS 571, at *5 (Tenn. Ct. App. Sept. 30, 2008); *Burgess v. Kone, Inc.*, No. M2007-02529-COA-R3-CV, 2008 WL 2796409, at *2; 2008 Tenn. App. LEXIS 406, at *7 (Tenn. Ct. App. July 18, 2008)).

In this case, Hanson included several theories of recovery in his complaint, including, *inter alia,* the TCPA and breach of contract. As mentioned above, the complaint specifically noted the catchall provision of the TCPA, Section 47-18-104(b)(27), but was not limited to that TCPA provision. In an effort to resolve the litigation between the parties, we will "soldier on" to examine whether the damage award to Hanson can be sustained under Section 47-18-104(b)(27), before looking at whether the trial court's award may have been made under an additional theory of recovery. *See Mills v. Partin*, No. M2008-00136-COA-R3-CV, 2008 WL 4809135, at *6; 2008 Tenn. App. LEXIS 666, at *15-16 (Tenn. Ct. App. Nov. 4, 2008) (finding that the trial court's decision was based on the violation of the other catchall provision in the TCPA, found in Section 47-18-104(a)[5] despite the fact that the trial court failed to specify which TCPA provisions were violated).

## TCPA

Turning now to the substantive arguments raised on appeal, Hobbs Co. argues that the award of damages to Hanson cannot be sustained under the TCPA because the Act is not applicable in this case. Hobbs Co. contends that the subject tractor is not a "good" within the definition contained at Tennessee Code Annotated § 47-18-103(7) because Hanson purchased the tractor to use for commercial farming purposes, and consequently the TCPA does not apply.

In response, Hanson contends that this argument by Hobbs Co. is based only on the first half of the statutory definition of "goods," and ignores the second half of the definition, which explicitly includes chattels obtained for use in "a franchise, distributorship agreement, or similar business opportunity." Tenn. Code Ann. § 47-18-103(7).[6] Therefore, Hanson maintains, the definition includes business chattels such as the tractor at issue.

After reviewing the statute, we find that we need not decide whether the subject tractor is a "good" under the TCPA. Section 47-18-104(b)(27) makes unlawful any "act or practice which is deceptive to the consumer or to any other person," without specifically referring to goods.[7] As noted above, the predicate to this subsection states that the act at issue must "affect[] the conduct of . . . trade or commerce," and the statutory definition of this term

---

[5]Tenn. Code Ann. § 47-18-104(a) has been amended as well.

[6]The entire definition of "goods" in Tennessee Code Annotated § 47-18-103(7) includes "any tangible chattels leased, bought, or otherwise obtained for use by an individual primarily for personal, family, or household purposes or a franchise, distributorship agreement, or similar business opportunity." Tenn. Code Ann. § 47-18-103(7).

[7]Many of the subsections in Tennessee Code Annotated § 47-18-104(b) refer specifically to goods or services. *See, e.g.,* Tenn. Code Ann. § 47-18-104(b)(1), (2), (4)-(10), (18), (22), and (23)(2012).

refers to goods. The reference to goods in this definition, however, is in a long string of items covered by the phrase "trade or commerce," including "goods, . . . or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated[.]" Tenn. Code Ann. § 47-18-103(19). Hobbs Co. does not argue on appeal that the tractor does not fit within this broad definition of trade or commerce. As to the argument that the tractor transaction is not covered by the TCPA because Hanson purchased it to use in his farming business, Hobbs Co. has cited no authority for this assertion, and we have found none. This issue is without merit.

Hobbs Co. argues next that the trial court erred in finding that the tractor at issue had 10,000 more hours of usage than was advertised. Hobbs Co. notes that its expert Hobby said that the hour meter on a John Deere tractor cannot be modified, and Hanson's expert Hegg testified that it would be highly unusual for a tractor's hour meter to "roll over," that is, after reaching 10,000 hours, for the meter to start back at zero. Under these circumstances, Hobbs Co. argues, the trial court erred in crediting Hegg's testimony that the subject tractor actually had 12,506 hours of use.

In his testimony, Hegg explained that he divined the actual number of hours of use for the subject tractor by using a method of diagnostic assessment that was well known by expert tractor mechanics. The testimony by the Hobbs Co. expert, Hobby, did not directly contradict this, in that Hobby indicated that his expertise did not extend to the tractor mechanics. The trial court clearly credited Hegg's testimony on the actual number of hours of usage for the tractor. On appeal, we give great deference to the trial court's assessment of the witnesses' credibility. ***Church v. Church***, 346 S.W.3d 474, 481 (Tenn. Ct. App. 2010); ***In re M.L.D.***, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). The trial court's factual finding on the tractor's hours of usage is fully supported by the evidence.

Hobbs Co. next argues that its eBay advertisement was not "deceptive" because the advertisement contained "as is" disclaimer language and a warranty disclaimer. In light of this, Hobbs Co. maintains, Hanson ended up paying a much lower price than he would have paid for a tractor with a warranty. Hobbs Co. also relies on the fact that its eBay advertisement said only that the tractor had low hours "on the meter," and it is undisputed that the hour meter on the tractor at issue in fact read 2,506 hours. It insists that it would be unreasonable to expect a seller such as Hobbs Co. to inspect each tractor offered for sale to determine the actual number of hours of usage.

There is no single, bright-line standard for determining whether a particular act or practice is deceptive under the TCPA. ***Campbell,*** 2010 WL 1240732, at *6; 2010 Tenn. App. LEXIS 239, at *18-19 (citing ***Fayne v. Vincent***, 301 S.W.3d 162, 177 (Tenn. 2009); ***Ganzevoort v. Russell***, 949 S.W.2d 293, 300 (Tenn. 1997); ***Tucker***, 180 S.W.3d at 116). The determination

of whether a specific representation in a given case is "deceptive" is a question of fact. In ***Tucker v. Sierra Builders***, this Court explained:

> A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact. Thus, for the purposes of the TCPA . . . , the essence of deception is misleading consumers by a merchant's statements, silence, or actions.

***Tucker***, 180 S.W.3d at 116 (citing Jonathan Sheldon & Carolyn L. Carter, *Unfair and Deceptive Acts and Practices* § 4.2.3.1, at 118-19 (5th ed. 2001)); ***see also Campbell***, 2010 WL 1240732, at *7; 2010 Tenn. App. LEXIS 239, at *20-21. Moreover, "[t]o be considered deceptive, an act is not necessarily required to be knowing or intentional," so a negligent misrepresentation may serve as the basis of a claim under the TCPA. ***Fayne***, 301 S.W.3d at 177.

We decline to hold that the waivers, disclaimers, and "as is" language contained in the sales contract shield Hobbs Co. from liability under the TCPA. ***See*** Tenn. Code Ann. § 47-18-113(a)(2001) ("No provision of this part may be limited or waived by contract, agreement, or otherwise . . ."); ***see also Morris v. Mack's Used Cars***, 824 S.W.2d 538, 540 (Tenn. 1992) (allowing a seller to avoid liability for unfair or deceptive acts or practices by the use of contractual disclaimers would contravene the broad remedial intent of the TCPA); ***Smith v. Scott Lewis Chevrolet, Inc.***, 843 S.W.2d 9, 11 (Tenn. Ct. App. 1992). We also respectfully reject the argument that there was no deceptive act because the advertisement stated that there were 2,506 hours "on the meter," which was technically true. It is true that, in one place in the ad, the phrase "low hours" was modified by the phrase " showing on the meter."[8] However, the ad referred three times to the tractor's "low hours," only once with the qualifying phrase "showing on the meter." Reviewing the advertisement overall, we agree with the trial court that it clearly conveys that the tractor in fact had "low hours" of usage. Hegg testified that a tractor with 10,000 hours could be equated to a car with 500,000 miles, and he considered 12,500 hours of usage to be extremely high. This supports a finding that the tractor could not truthfully be described as having "low hours." Based on all of this evidence, we hold that the record fully supports the trial court's finding that the advertisement was "deceptive" within the meaning of the TCPA.

Under all of these circumstances, we affirm the award of compensatory damages to Hanson pursuant to the TCPA, Tennessee Code Annotated § 47-18-104(b)(27).

---

[8]In the course of the description of the tractor in the eBay ad, it states the following: "**LOW HOURS!!!**„„SHOWING ON THE METER„" (emphasis and difference in font size in original).

**Damages Calculation**

Hobbs Co. questions the trial court's calculation of damages in this case. Hobbs Co. argues that the trial court erred in failing to account for the trade-in value received by Hanson when he traded in the subject tractor for a new tractor. Hobbs Co. also contends that the trial court erred in not excluding from the damages calculation the value of the new tractor tires, because the eBay advertisement clearly stated that the purchaser would need to replace the tires on the tractor.

The proper measure of damages is a question of law, reviewed on appeal *de novo*. *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 789 (Tenn. Ct. App. 2010) (citing *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998); *Sexton v. Sevier County*, 948 S.W.2d 747, 749 (Tenn. Ct. App. 1997)). However, the actual calculation of damages is a question of fact. *Poole*, 337 S.W.3d at 789 (citing *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994); *Reagan v. Wolsieffer*, 240 S.W.2d 273, 275 (Tenn. Ct. App. 1951)). "This Court will modify a trial court's award of damages based on the proper measure only if the evidence preponderates against the amount of damages awarded." *Poole*, 337 S.W.3d at 789; *see also Beaty*, 15 S.W.3d at 829 (citing Tenn. R. App. P. 13(d); *Armstrong v. Hickman County Highway Dept*, 743 S.W.2d 189, 195 (Tenn. Ct. App. 1987)).

From our review of the record, we agree that the basis for the numbers used by the trial court is not crystal clear. However, the numbers are within a range that is supported by the evidence in the record. The trial court valued the tractor with 2500 hours at approximately $63,600 with new $8,000 tires. The tractor with the actual 12,500 hours, plus 450 hours of use by Hanson, with new tires and Hanson's repairs, received a trade-in value of $42,500. These figures support the trial court's holding that the difference in value amounted to approximately $20,000. The trial court added $23,136, spent by Hanson on repairs to the tractor and labor costs. This yields the $43,136 in damages found by the trial court. We also note that Hanson testified he would not have been interested in this tractor at all had he known its true hours of usage, and thus, would not have spent money on new tires for a tractor with 12,500 hours. This testimony was supported by Hegg's expert testimony that virtually no buyer would be interested in a tractor with over 12,000 hours of usage. Under these circumstances, we find it was not improper for the trial court to include the amount spent on new tires in its calculation of damages. Overall, we find that the calculation of compensatory damages is supported by a preponderance of the evidence in the record.

**Attorney Fees**

Finally, Hobbs Co. argues that the trial court erred in awarding attorney fees and discretionary expenses to Hanson, and in declining Hobbs Co.'s request for an award of

attorney fees and expenses.  Hobbs Co. notes that the contract Hanson signed contained an unrestricted attorney-fee-shifting provision, which required Hanson to pay the attorney fees incurred by Hobbs Co. if Hanson brought an action against Hobbs Co., regardless of the outcome of the litigation.  Hobbs Co. argues that this agreement should be enforced as written, and thus, Hobbs Co. should be entitled to have Hanson pay all attorney fees, court costs, and expenses incurred by both parties in litigating this matter.

As noted above, we have affirmed the award of compensatory damages pursuant to the TCPA.  For this reason, we find that the trial court's award of attorney fees to Hanson was also pursuant to the TCPA.  As with the use of disclaimers and "as is" language in a contract, the use of a contractual provision such as that asserted by Hobbs Co. in this case would be contrary to the remedial intent of the TCPA. On this basis, we reject the argument that the attorney fee award to Hanson should be reversed, and that Hanson should be required to pay the fees incurred by Hobbs Co. based on the provision in the sales contract. The award of attorney fees and expenses to Hanson is affirmed.

All other issues raised on appeal are pretermitted by our holdings herein.

### CONCLUSION

The decision of the trial court is affirmed.  Costs on appeal shall be assessed against Appellant J.C. Hobbs Co., Inc. and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

-19-