# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 12, 2014 Session

## DAVID M. DULANEY, ET AL. v. DON WALKER CONSTRUCTION, ET AL.

### Appeal from the Circuit Court for Hamilton County
### No. 11C1471      W. Neil Thomas, III, Judge

### No. E2013-00805-COA-R3-CV-FILED-JULY 30, 2014

David M. Dulaney and Traci L. Dulaney ("Plaintiffs") sued Don Walker Construction ("Walker Construction") and Rhonda P. Walker (collectively "Defendants") with regard to real property and a house constructed and sold by Defendants to Plaintiffs. After a trial, the Circuit Court for Hamilton County ("the Trial Court") entered its judgment finding and holding, *inter alia*, that Plaintiffs had failed to prove negligent construction and had failed to prove misrepresentation and violations of the Tennessee Consumer Protection Act. Plaintiffs appeal. We find and hold that the evidence does not preponderate against the Trial Court's findings, and we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Whitney Durand, Chattanooga, Tennessee, for the appellants, David M. Dulaney and Traci L. Dulaney.

David L. Franklin, Chattanooga, Tennessee, for the appellees, Don Walker Construction and Rhonda P. Walker.

# OPINION

## Background

Plaintiffs filed suit against Defendants in December of 2011 alleging, in pertinent part, negligent construction, misrepresentation, and violation of the Tennessee Consumer Protection Act. Plaintiffs sought, among other things, rescission of the agreement for their purchase of the property at issue. The case was tried without a jury in November of 2012.

In late 2009, Plaintiffs entered into a contract to purchase from Defendants real property with a house located in Hamilton County, Tennessee near Savannah Bay ("the Property"). The house ("the House") was under construction by Defendants at that time. Because the Property was affected by the 690 contour line and TVA had a property interest in the land below the 690 contour line, Walker Construction applied for permission from the Tennessee Valley Authority ("TVA") for a deed modification to allow construction of the House. TVA granted conditional approval to begin construction, but up to the time of trial of this case, TVA had not granted a final deed modification.

Plaintiffs alleged that because the Property was affected by the 690 contour line, Defendants were required to comply with TVA requirements pertaining to grading, and that because Defendants allegedly did not so comply with the TVA requirements, TVA could require either Plaintiffs or Defendants to remove the House from the Property. Plaintiff Mr. Dulaney admitted that he had a conversation with Mr. Walker while the House was being constructed. During that conversation, Mr. Walker showed Mr. Dulaney a "silk [sic] fence" on the Property and explained that the real property beyond this fence was TVA property. Mr. Dulaney asked if he could build a gazebo on this land, and Mr. Walker told him that he could not build anything "structural-wise" on the property that TVA had an interest in or TVA could require that it be torn down.

With regard to the 690 line, Mr. Walker testified that an application was submitted to TVA to allow Defendants to fill below the existing 690 contour line to make buildable lots. Dirt was added to the front portion of the Property to move the 690 line backward on the lot to allow for building the House above the 690 line. Mr. Walker testified that the area where the House was constructed was at or above the 690 line by virtue of the added dirt.

Mr. Walker asserted that he paid all of the fees necessary to obtain the deed modification from TVA and that the fact that the deed modification was not obtained was due to someone else's mistake, either TVA or the title company. An August 2, 2012 letter

from TVA introduced as an exhibit at trial stated that although Mr. Walker had paid the required fees, the deed modification could not be granted to Mr. Walker as he no longer was the fee owner of the Property. The letter from TVA stated that in order to obtain a deed modification the owner of the Property would need to submit a new application and an application fee of $5,000 and would then be responsible for administrative costs including title research and document preparation costs.

The sale of the Property to Plaintiffs closed in early 2010. Plaintiffs moved into the House shortly before the closing and lived there until June or July of 2011, when they moved to South Carolina. Plaintiffs began to build a deck on the House in March of 2010, and Mr. Dulaney discovered a water problem while digging. Plaintiffs contacted Mr. Walker, who, after investigating determined that a water line had broken. Walker Construction repaired the water line.

In March of 2011, Plaintiffs installed a sump pump near a foundation wall of the House. Plaintiffs alleged that the sump pump drained water far in excess of a normal amount. Mr. Walker testified at trial that the water going through the sump pump did not come from under the foundation, but rather from rain and from a creek behind the House flooding.

Plaintiffs had another problem with water running down the driveway and allegedly getting under the slab. Plaintiffs contacted Defendants about this problem, and Walker Construction installed a curb to deflect that water. Plaintiffs also notified Defendants in the fall of 2011 about the need for a second gutter and problems they were having in getting it installed. Defendants contacted the gutter installer and had the job done in about a week. Defendants also replaced or repaired some cracked man-made rock on the outside of the House at Plaintiffs' request. Additionally, Plaintiffs complained about cracks in tiles in the bathroom. Defendants offered to replace these tiles, but Plaintiffs filed this suit before the replacement could be done. Plaintiff Mr. Dulaney testified at trial that he did not blame Defendants for not replacing the tiles after suit was filed. Mr. Dulaney agreed that other than the tiles, Defendants repaired everything that Plaintiffs requested.

Plaintiffs put the House on the market for sale in August of 2011. They originally listed it for around $176,400. Plaintiffs received one offer for around $150,000, which they declined. Plaintiffs took the House off the market in November of 2011.

In January of 2012, Plaintiffs rented the House. The renters are paying the rental company $1,250 per month, and Plaintiffs net over $1,000 a month of that rent. Plaintiffs' mortgage on the House is $920 per month. The renters have a one year lease on the House. At the time of trial Mr. Dulaney believed that the renters would renew the lease.

The House was appraised in April of 2012 for a fair market value of $162,500. The appraiser, William Haisten, testified that the value of the House is less than what Plaintiffs paid due to the current market and not because of the condition of the House.

Realtor Charles W. Walldorf testified as an expert for Plaintiffs. Mr. Walldorf visited the Property, reviewed Mr. Haisten's appraisal of the House, and reviewed the disclosure statement prepared for the potential sale of the House. Mr. Walldorf testified:

> this particular home seemed to be in very good order. It was well kept. It is leased at this point. The tenants were keeping it well. And as I mentioned, I have noticed . . . - - some cracks in the concrete, in the garage, and that type of thing. But other than that, it looked fairly normal.

He testified: "The home is salable, but at a very reduced price, I feel." Mr. Walldorf testified that he spent about 40 minutes in the House and that the tenants did not complain to him about any problems with the House. He admitted that the House was in good shape and was a good, habitable home. Mr. Walldorf further admitted that it was not uncommon to find cracks in concrete floors or in sheet rock walls in buildings in Hamilton County.

Michael Allen Price of MAP Engineers, LLC performed engineering work for Walker Construction in the subdivision where the Property is located. Mr. Price testified that he prepared a master grading plan for the development. Mr. Price had no knowledge of whether compacted fill was used during the preparation of the Property for construction of the House. It was not within the scope of his services to determine whether compaction was suitable.

Mr. Price never had any conversations with Mr. Walker or anyone else about the construction of the House. Mr. Price does not know what was used to backfill during construction of the House. Mr. Price was asked what he would have used in the construction of the House as backfill if he did not use gravel, and he testified that he would most likely use chert, which is a specific type of dirt. He agreed, however, that it was an acceptable building practice in Hamilton County to use limestone as backfill. When asked if it was acceptable to use limestone specifically in the construction of the House, Mr. Price stated: "That's not an easy question to answer yes or no on. It's going to depend upon the conditions that are encountered at the time of construction whether or not that would be acceptable."

With regard to the foundation and fill used during construction of the House, Mr. Walker testified:

We pushed up the dirt that was there up against the wall, put the gravel on the inside, put the dirt on the outside. That's why your footing shows it to be deep because we backfilled it. When the footing was dug, it wasn't that deep. . . . If it had been fill dirt and you built on fill dirt, yes, it would crumble. So when you dig through that to hardened ground, it prevents that.

Mr. Walker was asked if using gravel as was used, not dirt, inside the foundation walls would lead to instability, and he stated:

No, sir. It's better stability. . . . It's better stability, just like you said a while ago. You backfill it with dirt and that dirt is going to settle, and you're going to have a void between the dirt and your concrete. And if that void is enough, that concrete will absolutely enclose and crack, but it won't with gravel because gravel doesn't settle.

Mr. Walker then was asked if dirt didn't attract the water that allegedly got through the foundation wall of the House, and he stated:

It didn't come out of the foundation. All that said is it went through the pump. When that pump is sitting out in the open for rain to go into it and the back waters of the creek to flood up and it goes into that pump, it's going to pump it out too. It doesn't know where it's coming from. So there is no way it can be said that 42,000 gallons of water came out of that foundation. It's a fact.

Mr. Walker testified that the requirement on the grading plan calling for compacted dirt below 690 feet was met. Mr. Walker agreed that when gravel is used water can collect inside foundation walls and stated that this is what happened when the water line burst. Mr. Walker explained that he built the House on a slab and that he put in a vapor barrier on top of the gravel to prevent moisture underneath the House from coming up into the House.

With regard to Mr. Price's testimony regarding using chert, Mr. Walker stated:

I don't agree with that because dirt settles unless it's compacted. Now, he didn't say anything about putting compacted dirt in it; he just said put chert in there.

If I filled this thing up with chert, levelled [sic] it, put my vapor barrier, poured the slab, within six months, the floor would be cracking the size you could put your hand in, not hairline cracks, because dirt compacts itself,

especially with tons of concrete on it. That's why I go to - - now, if I had used chert, it's $50 a load. It's a lot cheaper. Gravel is $300 a load, but much better material.

After trial the Trial Court entered its Memorandum and Judgment on February 26, 2013 finding and holding:

This matter was tried before the undersigned on [November 6, 7, 8, and 9, 2012]. Originally, this case was set for a jury trial, but the parties then waived their rights to a jury trial, and the matter was tried before the undersigned. In their post-trial memorandum of law, Plaintiffs dropped their claim for breach of warranties and punitive damages, relying instead on the remaining theories of recovery and treble damages under the Tennessee Consumer Protection Act. Those other theories are rescission of the agreement for the sale of the home in question and restitution for mortgage payments, real estate tax and repairs. Although the Plaintiffs have stated that they have only two claims, rescission and restitution, these are the remedies which they seek under a variety of legal and factual theories. The Court will attempt to discuss each of these.

Before discussing each of those theories, the Court would like to set forth the chronology of the main claim underlying this lawsuit, namely, a deed modification which was requested of Tennessee Valley Authority ("TVA") with respect to filling a portion of the lot of the Plaintiffs to what is known as the 690 line. This lot is one of many lots in three subdivisions developed by D & M Properties, LLP ("D & M") in the Savannah Bay area of Hamilton County. On July 28, 2005, Don Walker ("Walker") filed an application with TVA to be able to fill the property to the 690 line. On August 10, 2005, Walker submitted the paperwork for a deed modification. On December 8, 2006, TVA approved the application to fill the Plaintiffs' lot and would record a deed modification if all conditions regarding the filling and construction on the lots were complied with. A contract to purchase was signed on December 4, 2009 by the Plaintiffs with Walker. The house was built on slab with limestone gravel fill. Closing on the home took place on March 4, 2010, with Gateway Title Company, LLC, as the closing agent. No conditions were noted, and title insurance was issued. The Dulaneys lived in the home until July, 2011, when they moved to Anderson, South Carolina. The Plaintiffs contend that they have encountered other problems with the property, such as alleged excessive water containment under the slab, cracks in tile and exterior brick and excessive water in the TVA property behind their lot.

-6-

The home has been rented by the Plaintiffs since January, 2012, for $1,250 per month with a mortgage of $900 per month. Except for the water and some of the cracks, Walker has repaired the property pursuant to complaints of the Plaintiffs. Some of the cracks were not cured because this lawsuit was filed.

Returning to a discussion of the deed modification, Walker testified at the time of the closing he thought he had paid all of the fees of TVA. Walker received a copy of a letter sent by TVA to Deborah Fisher[1], dated February 2, 2012. At that time, Walker determined that the amount TVA was claiming was $1,035.40, which he paid on February 23, 2012. By letter dated May 7, 2012, TVA acknowledged that all fees had been paid but a further glitch arose. TVA stated that although all fees had been paid, it could not record the deed modification because Walker was no longer the owner. TVA then advised that the new owner would have to re-start the process with an initial deposit of $5,000. It is interesting to note that the tract referenced in letter of September 26, 2011, from TVA in which TVA indicated that $1,035.40 remained to be paid, was not the tract upon which the Plaintiffs' house was built.

Addressing first the claim of negligence in the construction of the house, the main complaint lies with respect to the limestone placed under the slab. Although Plaintiffs' expert, Mike Price, stated that he would have filled with chert, he said it was acceptable for Walker to fill with limestone. Even if it were impermissible, there is no evidence of the amount of damage. The same applies with respect to the allegations of cracks. There is no evidence of the cause of the cracks or the damage associated therewith.

With respect to negligent misrepresentation and misrepresentation, the Court does not believe that the evidence preponderates in favor of the Plaintiffs on these claims, except perhaps with respect to the TVA "wetlands." Even on this theory, the Plaintiffs were aware that there was a creek on the TVA property and that that creek overflowed. Finally, with respect to these claims, there is no evidence of the amount of damage which may have been caused by such misrepresentations. The same may be said of the claim for violation of the Consumer Protection Act. Accordingly, the remedy of rescission is not appropriate.

---

[1]Fisher is a neighbor of the Plaintiffs.

In short, Plaintiffs have not prevailed upon their claims by a preponderance of the evidence. Even if they had, there is evidence of comparative fault on the part of TVA and the title company which closed the transaction. To be liable in comparative fault, a party does not have to be a party to the lawsuit. If the title company had noted that the deed modification was not of record at the time of the closing, the entire problem with respect to the deed modification would likely have been satisfied. Likewise, if TVA had acted promptly with respect to the payments made by Walker, Walker would still have been a title owner and able to accept the deed modification. For the foregoing reasons, judgment will be entered in favor of the Defendants.

(footnote in original). Plaintiffs appeal the Trial Court's judgment to this Court.

## Discussion

Although not stated exactly as such, Plaintiffs raise four issues on appeal: 1) whether the Trial Court made sufficient findings of fact; 2) whether Plaintiffs proved their claim for negligent construction; 3) whether Plaintiffs proved that Defendants made negligent misrepresentations; and, 4) whether Plaintiffs proved that Defendants violated the Tennessee Consumer Protection Act. Defendants raise an issue regarding whether Plaintiffs proved that TVA or Gateway Title, LLC were liable for comparative fault, and also filed a motion with this Court seeking consideration of post-judgment facts.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court made sufficient findings of fact. Pursuant to Tenn. R. Civ. P. 52.01:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. . . .

Tenn. R. Civ. P. 52.01.

-8-

In their brief on appeal, Plaintiffs argue that the Trial Court failed to make sufficient findings of fact in this case. We disagree. In its judgment, quoted above, the Trial Court did make specific findings of fact relative to the issues which were tried. While some of the findings of fact that the Trial Court made are brief, this brevity is because little or no evidence was presented with regard to that specific fact. We find the Trial Court made sufficient findings of fact in this case given the evidence presented to it. This issue is without merit.

We next consider whether Plaintiffs proved their claim for negligent construction. As our Supreme Court has explained:

> In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."

*Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (quoting *Giggers v. Memphis Hous. Auth.,* 277 S.W.3d 359, 364 (Tenn. 2009)).

With regard to the claim of negligent construction, the Trial Court found and held:

> [Plaintiffs'] main complaint lies with respect to the limestone placed under the slab. Although Plaintiffs' expert, Mike Price, stated that he would have filled with chert, he said it was acceptable for Walker to fill with limestone. Even if it were impermissible, there is no evidence of the amount of damage. The same applies with respect to the allegations of cracks. There is no evidence of the cause of the cracks or the damage associated therewith.

A careful and thorough review of the record on appeal reveals that the evidence does not preponderate against these findings made by the Trial Court. As such, we find no error in the Trial Court's holding that Plaintiffs failed to prove negligent construction.

We next consider whether Plaintiffs proved that Defendants made negligent misrepresentations. Our Supreme Court has explained that: "[T]o succeed on a claim for negligent misrepresentation, a plaintiff must establish 'that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably

relied on the information.'" *Morrison*, 338 S.W.3d at 437 (quoting *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)).

With regard to this issue, the Trial Court specifically found and held:

With respect to negligent misrepresentation and misrepresentation, the Court does not believe that the evidence preponderates in favor of the Plaintiffs on these claims, except perhaps with respect to the TVA "wetlands." Even on this theory, the Plaintiffs were aware that there was a creek on the TVA property and that that creek overflowed. Finally, with respect to these claims, there is no evidence of the amount of damage which may have been caused by such misrepresentations. The same may be said of the claim for violation of the Consumer Protection Act. Accordingly, the remedy of rescission is not appropriate.

The evidence in the record on appeal does not preponderate against these findings made by the Trial Court. As such, we find no error in the Trial Court's holding that Plaintiffs failed to prove negligent misrepresentation.

Next, we consider whether Plaintiffs proved that Defendants violated the Tennessee Consumer Protection Act. Our Supreme Court has explained: "The Tennessee Consumer Protection Act forbids 'unfair or deceptive acts or practices affecting the conduct of any trade or commerce.' Tenn. Code Ann. § 47-18-104(b). The Act covers the transfer of real property . . . ." *Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009). The *Fayne* Court further informed:

Negligent misrepresentations may be found to be violations of the Act. A deceptive act or practice is, in essence, "a material representation, practice or omission likely to mislead . . . reasonable consumer[s]" to their detriment.

In a transaction involving the sale of real property, the seller has a duty to disclose to the buyer material facts that affect the property's value and that are not known or reasonably discoverable by a purchaser exercising ordinary diligence.

*Id*. at 177 (citations omitted).

With regard to this issue, the Trial Court specifically found, as discussed above, that Plaintiffs had not proven their claims of misrepresentations and further that Plaintiffs had not proven any damages. The evidence in the record on appeal does not preponderate against

-10-

the Trial Court's findings relevant to this claim. Given this, we find no error in the Trial Court's holding that Plaintiffs failed to prove their claim of violation of the Tennessee Consumer Protection Act.

Finally, we turn to Defendants' issue regarding whether Plaintiffs proved that TVA or Gateway Title, LLC were liable for comparative fault, and to Defendants' motion to consider post-judgment facts. Specifically, Defendants request that this Court take notice of the fact that TVA granted a deed modification post-trial abandoning their easement rights to the Property. Our disposition of Plaintiffs' issues, as discussed above, has rendered the issue of comparative fault moot. Similarly, Defendants' motion to consider post-judgment facts also is rendered moot by our resolution of Plaintiffs' issues. We, therefore, need not consider the issue raised by Defendants, and we deny Defendants' motion to consider post-judgment facts as it is moot.

The Trial Court made sufficient findings of fact and conclusions of law given the evidence presented to it. The evidence does not preponderate against any of the Trial Court's findings, and these findings support the Trial Court's conclusions of law. Given all of the above, we affirm the Trial Court's February 26, 2013 Memorandum and Judgment.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, David M. Dulaney and Traci L. Dulaney, and their surety.

_____
D. MICHAEL SWINEY, JUDGE